No. 284.—J. F. C. TAYLOR *v.* DAVID PIPES and J. F. C. TAYLOR *v.* DAVID PIPES. (Consolidated.)

A third person who has purchased property which is incumbered by a mortgage which does not contain the pact *de non alienando* while proceedings are pending by the mortgagee to enforce it, and is in possession under a title translative of property, can only be evicted by the mortgage creditor by an hypothecary action. C. P., art. 69.

Property thus situated can not be seized under proceedings to enforce the mortgage until it has been declared subject to the mortgage by an hypothecary action; and if it has been seized an injunction will legally issue to protect the third possessor in the enjoyment of his property.

APPEAL from the Fourteenth Judicial District Court, parish of Morehouse. *Ray, J. Todd & Brigham,* for plaintiff and appellee. *D. C. Morgan,* for defendant and appellant.

WYLY, J. A motion is made to dismiss this appeal:

*First*—Because the amount of the bond is not sufficient for a suspensive appeal.

*Second*—Because only one of the defendants *in solido* has appealed.

*Third*—Because the clerk's certificate to the transcript is not sufficient.

The bond, being for the amount fixed by the judge, is good for a devolutive appeal, if it is not sufficient for a suspensive appeal.

As the appeal was taken by motion in open court and the bond given in favor of the clerk, all the necessary parties are before the court.

The certificate of the clerk we consider sufficient; besides, if insufficient, it is no ground to dismiss the appeal, the fault being attributable to the clerk.

The motion to dismiss is therefore denied.

ON THE MERITS.

The plaintiff Taylor, the third possessor of the mortgaged property, enjoins the enforcement of the mortgage against it, on the ground that the defendant has not brought an hypothecary action against him

conformably to articles 68 and 69 C. P., the mortgage not containing the pact *de non alienando;* and also because execution issued improperly against Tait, the mortgager, in this, there was no notice of judgment served upon him, the judgment being rendered by default.

The defendant contends that as Taylor acquired the property after his suit had been instituted to foreclose the mortgage, he is charged with notice of the proceeding, is not a third person in the sense of the law, and need not be proceeded against conformably to articles 68 and 69 C. P.

This raises the question whether a third person who acquires mortgaged property after suit or judgment against the original owner, can be deprived of it without an hypothecary action being brought against him conformably to the rule stated in articles 68 and 69 C. P. It is elementary that no one should be condemned or deprived of a legal right without a hearing.

If a third person has the right to buy mortgaged property pending the suit to foreclose the mortgage, his right can not be divested without some proceeding contradictorily with him, and the law has provided the kind of proceeding in express terms in articles 68 and 69 C. P.

The law has not prohibited the transfer of mortgaged property, pending the action to foreclose the mortgage. It is only where the ownership of the thing is involved that its alienation is prohibited pending the petitory action.

" The sale of a thing belonging to another is null."   *   *   *   Revised Code 2452.

" The thing claimed *as the property of the claimant can not be alienated* pending the action, so as to prejudice his right. If judgment be rendered for him, *the sale is considered as the sale of another's property,* and does not prevent him from being put in possession by virtue of such judgment." Revised Code 2453.

In the suit against Tait neither the ownership nor the possession of the property was involved; Pipes simply sought to foreclose his mortgage. The sale to Taylor pending the action was not the sale of another's property by his vendor. It mattered not how the suit resulted, Pipes could not be put in possession. He had only succeeded in getting judgment against Tait and having his mortgage rendered executory. In Barelli *v.* Delassus, 16 An. 283, the question was whether the owner of the mortgaged property could alienate it pending the suit to foreclose the mortgage, and the articles of the Civil Code quoted were examined on that point; and it was held that : " The sum and substance of article 2428 (2453) are that the owner of property, who has sued in revendication, is entitled, upon rendition of judgment in his favor, to be put in possession by virtue of such judgment, even if the defendant has alienated the property during the pendency of the

action. But a party who institutes the hypothecary action can not interfere with the right of the defendant, as owner, to alienate the property during the pendency of the suit, for two reasons: *first,* because, in the words of the article, this is not *the sale of another's property ;* and *secondly,* because the plaintiff, however successful, is not entitled *to the possession of the property."*

In Maskell *v.* Merriman, 9 R. 69, the precise question now in controversy was decided, to wit: whether the purchaser of mortgaged property, after suit or judgment against the original mortgager, is entitled to the rights of a third possessor and can only be proceeded against conformably to the rule stated in articles 68 and 69 C. P. It was there held that: "A purchaser of property subject to a mortgage, in possession, is entitled to the rights and *privileges of a third possessor, though a judgment had been obtained by the mortgagee against the mortgager, but no execution had issued before the purchaser took possession under the sale ; it is only when the mortgage contains the pact de non alienando that the third possessor is not entitled to notice."*

It is not pretended that Taylor took possession after execution had issued against Tait, the mortgager, contradictorily with whom the judgment foreclosing the mortgage was rendered.

Taylor acquired the title and the possession in August, 1866, as appears by the evidence, and the judgment under which the defendant Pipes proceeds was not signed till December, 1868. Taylor was, to all intents and purposes, a third possessor when his property was seized.

In Williams *v.* Morancy, 3 An. 227, it was held that: "Where mortgaged property is in possession of the mortgager, one expressly subrogated to the rights of the mortgagee may proceed against it *via executiva.* But where an act of mortgage contains no clause *de non alienando,* and the property is sold by the mortgager to a third person, neither the mortgagee nor any one subrogated to his rights can proceed against it by order of seizure and sale. *The creditor must resort to an hypothecary action."*

In Brown *v.* Routh, 4 An. 270, it was held that: "Where an act of mortgage does not contain the pact *de non alienando,* and the property is in possession of *a third person, no judgment can be rendered for its seizure and sale in an action against the mortgager alone."*

The same was also decided in Waddill *v.* Payne & Harrison, 22 An. 134.

These decisions but apply the textual provisions of the law.

Article 62 of the Code of Practice declares that: "The hypothecary action, like all real actions, follows the property to which it is attached, in whatever hands it may be found, *but it is subject to different rules, according as the property may be in possession of the debtor, of his heirs, or of third persons."*

The rule, where the hypothecated property is in the hands of a third

person, is stated in articles 68 and 69 C. P. It is the only rule appli-·cable to the enforcement of a mortgage on property in the hands of a third possessor, where there is not the non-alienation clause.

"If the hypothecated property be neither in the possession of the ·debtor nor of his heirs, *but in that of a third person,* the creditor has his action against that person in order to compel him to give up the property, or pay the amount for which it stands hypothecated. This is the hypothecary action properly speaking." C. P. 68.

"If thirty days after amicable demand, made from the debtor or his ·heirs, of the payment of an hypothecary debt, it has not been fully discharged, the creditor may bring his action against the third possessor of the property hypothecated to him, to have it seized and sold, if that third possessor have not within the ten days after having been notified ·of such a demand paid the amount of the hypothecary debt, including ·the interest and costs." C. P. 69.

The plaintiff in this suit, being a third possessor, was entitled to ten days notice of the legal demand made on the mortgager, before ·the defendant could bring an action against him to subject his property to the hypothecary claim. This is the plain requirement of article 69 C. P.

No notice of the kind was served upon the plaintiff. The defendant ·simply confirmed a judgment by default against Tait, the mortgager, and had the mortgage rendered executory. And he was attempting, when arrested by this injunction, to alienate the property of the plaintiff by carrying on a sale thereof contradictorily with Tait, who had neither the title nor possession of the property seized.

The plaintiff, a third possessor, found his property about to be sold in a proceeding to which he was not a party, and he caused it to be arrested by this injunction.

A sale made contradictorily with a party who has neither the possession nor ownership of the property seized would seem to be an utter nullity.

But the defendant contends that the rule laid down in articles 68 and 69 C. P. ought not to apply to a purchaser after suit against the mort-·gager, because it would create endless delay in enforcing mortgages ·and would enable third possessors, by successive transfers, practically ·to defeat the law.

We do not see the force of this objection.

If the third possessor, proceeded against under articles 68 and 69 C. P., does not give up the property, he is condemned in the judgment to pay the debt. And so judgment may be had against every subsequent purchaser against whom the hypothecary action may be brought.

The party whose pursuit is sought to be evaded may thus get judgment against every one endeavoring to defeat him.

The judgment under which this seizure was made was a default confirmed against Tait, the mortgager. No notice of judgment was given to him. It is well settled that before an execution can issue where a default has been confirmed, notice of judgment must be served upon the defendant. This is the rule in all cases where the judgment is appealable. C. P. 624; 6 R. 18; 3 L. 237; 21 An. 464.

The defendant, wholly disregarding the rights of the plaintiff, issued prematurely execution on the judgment against Tait, the mortgager, and seized the land owned by the plaintiff. ·

. The plaintiff had the right to resist the sale on the same ground that Tait, the author of his title, could. Were he merely a mortgage creditor, instead of the third possessor, he could plead the prematurity of the writ.

For the reasons stated we think the district judge did not err in perpetuating the injunction and recognizing the plaintiff as the owner of the land. This disposes of the first case. The second of these consolidated cases is in relation to the rent of the property during the seizure.

We think the court did not err in concluding that the plaintiff is entitled to the rent.

It is therefore ordered that the judgment appealed from be affirmed, with costs.

---

HOWELL, J., *concurring.* I concur in the reasoning of Mr. Justice Wyly, except on the question of notice of judgment to Tait, upon which I think it unnecessary to express an opinion in these cases. I concur in the conclusion.

---

LUDELING, C. J., *dissenting.* The record exhibits the following facts:

In November, 1856, the defendant Pipes sold to Tait & Cleveland a tract of land in the parish of Morehouse, and retained the vendor's privilege and a special mortgage thereon to secure the payment of the price. The act of mortgage does not contain the pact *de non alienando.* On the twenty-sixth of July, 1858, Tait & Cleveland made a partition between themselves of this tract of land. In March, 1864, Tait sold his portion of the land to B. W. and D. M. Burnham, who assumed to pay the mortgage debt due to Pipes as a part of the price of the sale to them. They sold to Haddick, who also assumed the payment of the mortgage debt due to Pipes; and Haddick sold to Taylor, the plaintiff in this suit, who expressly declares in the act of sale that he buys the . land subject to the mortgage of Pipes, and without warranty, except against the claims of the vendor and his heirs.

Pipes sued out executory process to sell the land mortgaged to him, and afterwards changed the executory to the ordinary proceeding to

foreclose his mortgage. The records of this suit having been destroyed by fire, the facts in relation to that suit are not as accurately shown by this transcript as might have otherwise been proper. It does not appear from the record when this suit to foreclose the mortgage was originally filed. It is stated by the defendant to have been filed in March, 1866, and this is not expressly denied by the plaintiff.

It appears that Tait, individually and as administrator of Cleveland (who had died) and W. A. Haddick, who had purchased from Burnham as aforesaid, and who was in possession of the property, were cited to defend the suit. And subsequently Pipes filed a supplemental petition, in which it is alleged that since the institution of the proceedings against Tait, individually and as administrator of the estate of Cleveland and W. A. Haddick and *during the pendency of said suit*, Haddick had sold the property to J. C. F. Taylor, and he asked that copies of the original and amended petitions in the suit against Tait and Haddick, together with the supplemental petition, might be served upon Taylor, and for judgment commanding him to pay the debt or to give up the land to be sold under the mortgage. It appears that a judgment by default in this suit was subsequently made final in favor of the plaintiff Pipes against Tait individually and as administrator of the estate of Cleveland for the amount of his claim, and making the mortgage executory and ordering the property described in the mortgage to be sold to satisfy the debt. It does not appear whether there was any other action in this case as to either Haddick or Taylor. This judgment was announced on seventeenth June, 1867, but was not signed until tenth December, 1868. In September, 1869, execution was issued under this judgment, the mortgaged property was seized and advertised for sale, and the plaintiff in the present suit (Taylor) enjoined the writ on the following grounds: That the judgment under which the seizure was made was against W. C. Tait individually and as administrator; that there was no judgment against him (Taylor), and as to him the suit was still pending. That the act of mortgage did not contain the pact *de non alienando,* and the land could not be seized in petitioner's possession under a judgment against the original mortgager. That the proceedings against himself and Tait had not been preceded by the demand and notices required by law before an hypothecary action could be instituted. That no notice of judgment had been served on the judgment debtor before the issuing of execution. That the mortgage was extinguished by virtue of a probate sale made of a portion of the land embraced in the mortgage. And, finally, it was urged that the claims upon which the judgment is based were prescribed.

The plaintiff also enjoined the sheriff from leasing the land seized, on the grounds above stated, and subsequently filed an amended

petition claiming the amount of rents already collected by the sheriff. These suits were consolidated and tried together. There was judgment in favor of the plaintiff perpetuating the injunctions and condemning the sheriff and Pipes *in solido* to pay $1760, the amount of rents collected and costs, and the defendant Pipes has appealed.

The principal question for decision in this cause is whether Taylor, who purchased during the pendency of the suit to foreclose the mortgage against his vendor, is entitled to the notice required by law in the hypothecary action proper ?

It has already been stated that Haddick, who was in possession when these proceedings were commenced, had assumed the payment of the mortgage debt; and he and the original debtors were sued *in solido*. During the pendency of this suit, to wit, on the seventeenth August, 1866, Taylor acquired the property in question, subject to the mortgage and without warranty, for $3000—a sum much less than the real value of the property, as shown by the evidence.

It is clear that, as to Haddick, the demand and notice prescribed by article 69 of the Code of Practice were not necessary, as he had assumed the debt and was personally bound for it. C. C., art. 3403; 15 La. 184, Woodward v. Dashiel; 6 R. 407, Twichel v. Andry; 1 R. 135, Duncan v. Elam.

Could Haddick practically defeat the object of that suit by transferring the mortgage property to another, pending the action to enforce it? I think not. It is contended that there is no proof that Taylor knew of the pendency of the suit. Perhaps there is no direct evidence of this fact; but the facts established satisfy us that Taylor had actual knowledge of the pendency of the suit; but whether he had or not, "it is a rule of universal jurisprudence and one which has been expressly recognized in our Code, that every man is presumed to be attentive to what passes in the courts of justice of the State where he resides or has transactions. A purchaser, therefore, of an estate actually in litigation, *pendente lite*, even for a valuable consideration, and without any express or implied notice in fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the decree in the suit. The rule may sometimes operate harshly, but it is founded upon grave considerations of public policy, and must therefore be respected and enforced. 3 An. 252, Gillispie v. Cammack; Story's Equity, vol. 1, p. 394; C. C. 2428; 13 La. 257; 4 La. 557, Cable v. Davenport; 1 John. Ch. R. 576. In 11 Vesey, Jr., 194, Sir William Grant said : " Ordinarily, it is true, the decree of the court binds only the parties to the suit. But he who purchases during the pendency of the suit *is bound by the decree that may be made against the person from whom he derives title ; the litigating parties are exempted from the necessity of taking any notice of a title so acquired.* As to them

it is as if no such title existed. Otherwise suits would be indeterminable, or, which would be the same in effect, it would be in the pleasure of one party at what period the suit would be determined. The rule may sometimes operate with hardship upon those who purchase without actual notice, yet general convenience requires its adoption." In the case of Cable *v.* Davenport, 4 La. 558 (Judge Martin being the organ of the court), it was held that where mortgaged property is sold and transferred by the third possessor, on the day of the service of the citation, at the suit of the mortgagee to enforce the mortgage against said third possessor, such transfer and disposition will not affect the rights of the mortgagee.

The plaintiff's counsel have referred to Maskell *v.* Merriman, 9 R. 70; Williams *v.* Morancy, 3 An. 228; Brown *v.* Routh, 4 An. 270; Waddill *v.* Payne & Harrison, 22 An. 135, and Barrelli *v.* Delassus, 16 An. 283, in support of a contrary doctrine, that is, to support the position that one who buys during the pendency of a suit is not affected by that suit, but must be proceeded against *de novo* by the hypothecary action proper. I do not think the authorities cited in point. In Maskell *v.* Merriman, at the time of the sale a judgment had some time previously been obtained on the mortgage note. In Williams *v.* Morancy, Williams and McMurtry executed a mortgage in favor of Morancy. Upon this mortgage Morancy obtained an order of seizure and sale, but desisted from executing it at the instance of Williams, who paid the greater part of the debt. Mrs. Chaille purchased the mortgaged property and assumed to pay the debt to Morancy. After her death her administrator paid the balance remaining due by draft upon Britton & Co., of which firm Koonts was a member, and at the request of the administrator Morancy transferred the note to Koonts, and subrogated the latter, as is alleged, to the rights under the judgment in executory proceeding. The attorney of Koonts then had an execution on the order of seizure and sale obtained by Morancy, and in the name of Morancy for the whole debt, and Williams, the original debtor, enjoined the sale.

It is manifest that in these two cases there was no suit pending in relation to the property mortgaged at the date of the sale. In the case of Maskell *v.* Merriman, chiefly relied upon, the court said : "In point of fact the mortgage had already been transferred to H. R. Lee & Co., and they had recovered judgment upon it against Kemper, the vendor, and other parties to it; but the record does not show that Merriman had any notice or knowledge that such a judgment had been rendered. * * The question then is whether Merriman was entitled to the rights and privileges of a third possessor, to the notice required by the Code to third possessors in ordinary cases, or whether the mere fact that a judgment had been rendered against the mortgager,

although no execution was issued until the fifteenth of November, 1842, more than ten months after the defendant took possession, can deprive him of such privilege." It is manifest that the essential difference between that case and the one at bar is that in the Merriman case he did not buy *pendente lite*, while in this case Taylor did. In the former case the sale did not in any manner interfere with the rights of the plaintiffs, whereas in the present case the effect of the sale to Taylor would be to defeat the suit, and that notwithstanding it was regularly commenced and conducted. In the cases of Brown and Harrison and Waddill *v.* Payne & Harrison, the court simply announced the general rule that mortgaged property can not be seized in the hands of a third possessor, unless the mortgage contain the pact *de non alienando*, without first giving him the notice required by article 69 of the Code of Practice. The question to be decided here was not made or passed upon in those cases.

In the case of Barrelli *v.* Delassus, the latter attempted to enforce a judgment obtained against J. A. Pellerin, in a suit for a settlement of partnership between them, by seizing property in the possession of Barrelli. This property, consisting of real estate, had been purchased in Pellerin's name, but by a verbal agreement it was to enure to the benefit of Delassus also. A verbal partnership existed between Pellerin and Delassus, and by a verbal agreement the property was to remain in Pellerin's name, and he was to allow Delassus the sum disbursed for the purchase, and render an account of the partnership.

During the pendency of the suit for a settlement of the partnership Pellerin executed a mortgage on the property in favor of Barrelli, who foreclosed the mortgage and bought the property. Delassus obtained judgment against Pellerin with privilege upon the property bought by Pellerin, and subsequently purchased by Barrelli, and under that judgment he seized the property in Barrelli's hands. There was judgment recognizing this seizure, but subsequently, on rehearing, the court said: "Upon a careful review of article 2428 of the Civil Code we have come to the conclusion that the doctrine of our former opinion is too broadly laid down."

It is evident that the facts in that case could not have presented the question raised in the case at bar. And to my mind it is equally evident that the question to be decided in this case is not decided in any of the cases cited in support of the position assumed by the plaintiff. If Taylor be entitled to the notice as a third possessor, his vendee, in case he should sell *pendente lite*, would also be entitled to the same notice, and the plaintiff would discover that he had a legal right without a practical or real remedy; which is an absurdity.

I do not believe that our laws relative to mortgages are so defective.

"The thing claimed as the property of the claimant can not be

alienated pending the action so as to prejudice his right." C. C. 2433.

The principle here announced has heretofore been applied, by analogy, at least, to one seeking to enforce his mortgage rights, by this court, and I see no good reason for overruling the decisions, but, on the contrary, I think the principle consonant with equity, reason and universal jurisprudence. 4 La. 557; 13 La. 257; 3 An. 252; 11 Vesey, Jr., 194.

Taylor ought not therefore to be treated as a third possessor.

But it is said that the right of the mortgagee is not affected or impaired by requiring him to pursue anew each successive purchaser of the property during the pendency of the suit, because the mortgagee would get a personal judgment against each one of them if they failed to deliver up the property. I do not agree in this opinion. No personal judgment against a third possessor is authorized by law. The privilege is accorded to him to pay the debt, if he prefer to do so, rather than to deliver up the property. But were it otherwise the mortgagee's real right, the right to sell the property mortgaged to satisfy his debt, would still be practically destroyed.

This suit was commenced in March, 1866. On the sixth of August, 1867, a supplemental petition was filed in the suit, which was served upon Taylor with citation, and which substantially notified him of the judicial proceedings and demands against the mortgaged debtors, and judgment was prayed for recognizing the mortgage and privilege and for the sale of the land, unless Taylor should pay the debt due.

Long after the service of this supplemental petition a judgment was rendered in the suit against the original debtors for the debt, and recognizing the mortgage and vendor's privilege and ordering the property to be sold to satisfy the mortgage debt. The destruction by fire of the records and the manner in which this case has been presented to us does not enable us to say with certainty whether the case as to Taylor is still pending or not, but we can conceive of no reason why it should be pending, or how the judge a quo could have ordered the sale of the property in the hands of Taylor unless he had passed upon the whole case. And no appeal seems to have been taken from said judgment.

Whether notice of judgment to the original debtors was served or not does not concern Taylor; it is a defense personal to the debtors, which they have not seen fit to urge. As to the position that the mortgage is extinguished because a part of the property (that received in the partition by Cleveland) was sold at probate sale, it is sufficient to say that in the case of Cleveland v. Pipes, where this question is made, we have held that there was no probate sale.

The plaintiff's counsel urge in their brief that the mortgage has no existence as to them, because there is no proof in the record that it

was ever recorded in Morehouse, and they urge that the judge *a quo* erred in permitting a copy of the act of mortgage with the certificate of recordation in the parish of Morehouse to be filed after the case had been tried. From the bill of exceptions it appears that the attorney for defendant, representing that he had been under the impression that the copy of the act of mortgage offered in evidence by the plaintiff's counsel had the certificate of recordation in the parish of Morehouse, and that he was taken by surprise, the judge permitted him to offer it in evidence. The case was tried by the judge; it is evident he had a right to grant a new trial to receive the evidence, and it is equally evident that the plaintiff's attorneys were not taken by surprise by the evidence, and that no injury or injustice could be done by receiving the act. Under these circumstances it would be carrying technicalities too far to reject the evidence. But applying a less technical rule to the plaintiff, there would be no necessity for the evidence; he has not alleged in his petition for injunction that the mortgage was not registered; it does not form one of the grounds for injunction sworn to, and therefore he can not urge it here.

There remains only one other question for decision, whether or not the claims secured by the mortgage were prescribed when the judgment was rendered against Tait, or before? Article 3466 of the Civil Code declares, that " creditors and all other persons who may have an interest in the acquiring of an estate, or the extinguishment of an obligation by prescription, shall have a right to plead it, even in case the person claiming such estate or bound by such obligation should renounce such right of prescription." On their face the notes are prescribed, unless there has been an interruption of the course of prescription.

On the trial the defendant offered an act under private signature to prove an interruption of prescription, which was objected to on the ground that the date of the act was not proven and, as to plaintiff, it had no date. The objection was overruled and the evidence was received. We think the ruling was erroneous. Where the real date of an act *sous seing privé* is not proved *aliunde*, it will date as to third persons only from the day of its production in court. 11 An. 275; 11 R. 56; 7 R. 53.

In a private act, whereby the land bought from Pipes was partitioned between the vendees (Tait and Cleveland), they acknowledge the debt of Pipes, and Tait obligates himself to Cleveland to pay a greater proportion of the debt in consideration of receiving the more valuable portion of the property divided. This act bears date twenty-sixth of July, 1858, but was only recorded on the fifteenth of December, 1859. The latter is the date of the act as to third persons. On the second day of March, 1864, Tait sold the land to B. W. and D. M. Burnham,

36

by act under private signature, which was recorded in the recorder's office on the sixth of March, 1864. In that act the debt to Pipes is acknowledged and the purchasers assume to pay it as part of the price of their purchase. Suit was instituted on these notes in March, 1866, and judgment was pronounced in 1867, but signed in 1868, *nunc pro tunc.*

It is clear, therefore, that the evidence in the record (without document K, which should have been excluded) shows that before prescription had accrued its course was interrupted by the repeated acknowledgments of the debt by the debtors.

I dissent therefore from the views of a majority of my associates in this case.

TALIAFERRO, J. I concur in the dissenting opinion of the Chief Justice.