No. 2973

Second Circuit

SECURITY TRUST CO. v. ROCKETT

(May 13, 1927. Opinion and Decree.)
(June 28, 1927. Rehearing Refused.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Prescription—Par. 4, 5.**

As soon as real estate is severed from the public domain and enters that of private ownership it becomes subject to prescription *acquirendi causa*.

2. **Louisiana Digest—Prescription—Par. 20 35, 37.**

Where one has in good faith and under title translative of property taken possession of land before it was severed from the public domain and remained in actual possession thereof as owner for ten years after it has been severed from the public domain his title to such land becomes good by prescription.

Civil Code, Art. 3478.
Handlin vs. Lumber Co., 47 La. Ann. 401, 16 South. 955.
Haggerty vs. Annison, 133 La. 338, 62 South. 946.

3. **Louisiana Digest—Prescription—Par. 33.**

It is not necessary that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land; provided it be with the intention of possession all that is included in the boundaries.

Civil Code, Art. 3437.

4. **Louisiana Digest—Public Lands—Par. 60.**

A state patent issued in contravention of Act No. 21 of 1886, prohibiting the purchase or entry of land occupied, possessed or cultivated by another, is absolutely null.

Albritton vs. Shaw, 148 La. 427, 87 South. 32.
Albritton vs. Stecro, 153 La. 561, 96 South. 121.

Appeal from the Third Judicial District Court of Louisiana, Parish of Union. Hon. S. D. Pearce, Judge.

Action by Security Trust Company against J. C. Rockett.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

H. C. Fields, of Farmerville, attorney for plaintiff, appellant.

H. E. Dawkins, of Farmerville, attorney for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff acquired the land from Summit Lumber Company in 1915, which acquired it from Union Saw Mill Company in 1909, which acquired it from Tandy T. Webb in 1906, who acquired it from the State of Louisiana by patent May 21, 1906.

The land was selected by and approved to the state under the swamp land grant

(Acts of March 2, 1849, and of September 28, 1850), May 6, 1852.

Defendant purchased the land from G. A. Killgore, Sr., in 1883, who purchased it from P. S. Rabun in 1878, who purchased it from James C. Parish in 1875, who purchased it from David M. Jameson in 1862, who purchased it from George Feazeal in 1857.

George Feazeal entered the land from the United States by cash entry 11385 March 22, 1851.

The sale from G. A. Killgore, Sr., to defendant is translative of title and defendant claims to have purchased in good faith and immediately to have gone into actual possession of the land and to have maintained such possession continuously ever since; and, besides the acts of sale mentioned, he pleads the prescriptions of ten and thirty years.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and it has appealed.

OPINION

Plaintiff contends:

1. That the "swamp grant" was one *in praesenti* and that on the selection by and approval to the state of the land May 6, 1852, its title related back to the date of the grant, March 2, 1849, and antedated the sale by the United States to defendant's author, George Feazel, March 22, 1851.

2. That prescription could not run against the state and has not run since the state parted with its title.

I.

Whether the State of Louisiana or George Feazel got the better title from the United States we deem it unnecessary to decide, for the reason that defendant's title to the land is good by prescription if not by deed, and for the further reason that before plaintiff can question defendant's title or possession he must show a better right, which he has not done.

II.

Plaintiff's counsel, in brief, says:

"There is no testimony to show that defendant was in actual and continuous possession for ten years since 1906, and the only testimony referring to a part of said land is from the plaintiff, who produced no corroborative testimony."

Counsel is in error.

Defendant, J. C. Rockett, testified:

(Testimony, page 1.)

"Q. Are you familiar with the land involved in this suit?

"A. Yes, sir.

"Q. About how many years, if at all, have you lived on that land?

"A. I think this is the forty-eighth year.

"Q. During the time that you lived there, what use, if any, have you made of this land?

"A. I farmed it every year, I think; I don't think I have missed a year.

"Q. Is all of this land in cultivation or open?

"A. Not quite all; very nearly all.

"Q. During the time that you have lived on it and had it in cultivation, has anyone molested you in your possession?

"A. No.

(Testmony, page 2.)

"Q. Is this entire eighty under fence?

"A. No, sir; there is a little that is not.

"Q. Is it not a fact that there is about thirty acres in the north forty that is the part you farm and have under fence?

"A. Rather in the middle of it. A little on the south and a little in the north is not in cultivation.

(Testimony, page 3.)

"Q. How many acres on the north end of this eighty is not under fence?

"A. I do not suppose over three or four acres.

"Q. How many acres on the south end?

"A. Possibly the same number of acres.

"Q. How many acres is under cultivation?

"A. We work it nearly all, except some few places.

"Q. How many years have you had the land not in cultivation under fence?

"A. For the whole forty-seven years.

(Testimony, page 2.)

"Q. I notice from your deeds that you secured this land from G. A. Killgore in 1883; how soon after that did you go on the land and take possession?

"A. I was in possession some time before that; I borrowed money from him to pay for it and didn't get the deed until I paid for it.

"Q. Since just before that time you have been in possession?

"A. Yes, sir. I made my first crop in 1876."

G. A. Killgore testified, page 8:

"Q. Do you know J. C. Rockett

"A. Yes, sir.

"Q. How long have you known him?

"A. All my life.

"Q. Do you know where he lives now?

"A. Yes, sir.

"Q. Are you familiar with his farms and fields there about his place?

"A. Pretty familiar with it.

"Q. Do you know about how long he has lived at the place that he now lives?

"A. For forty-nine years, I know.

"Q. During the time he has lived there, do you know what business he has been engaged in?

"A. Farming.

* * * *

"Q. Are you acquainted with this field and line just south of his house?

"A. Yes, sir.

"Q. That field south of his house, how long, if you know, has that been in cultivation?

"A. He has never let the field rest but very little; practically all the time."

J. C. Rockett, recalled, testified, page 9:

"Q. This land in controversy is the east half of northeast quarter of Section 33, Township 22 North, Range 2 West; what direction does that lie from your house?

"A. Nearly due south.

"Q. Have you more than one open field south of your house, or is it all one field?

"A. I have two fields; they are separate. South of my house.

"Q. Which field is this land in controversy in this suit?

"A. One near the house.

"Q. Is that the field that lies immediately south of your residence there?

"A. Yes, sir.

"Q. When did you move on that land?

"A. The 27th day of December, 1875.

"Q. Have you ever moved away since you went there?

"A. No, sir.

"Q. Was or was not this land in controversy in this suit open and in cultivation when you went there?

"A. Yes, sir.

"Q. What use have you made of it?

"A. Part of it I have worked for thirty years. Of course, there is a corner of it in the swamp, and the bayou runs across a corner, and some is worn out, but I am still working some and made a bale of cotton per acre on some of it this year.

"Q. Is the field you spoke of in one or both forties?

"A. Both."

O. A. Peppers, called by plaintiff, testified:

(Testimony, page 3.)

"Q. Are you familiar with the land described as the northeast quarter of northeast quarter of Section 33 and the southeast quarter of northeast quarter of Section 33, Township 22 North, Range 2 West, or what might be called the east half of

northeast quarter of Section 33, Township 22 North, Range 2 West?

"A. I went over that land four or five years ago for the Security Trust Company.

\*   \*   \*   \*

"Q. Taking the tract by forties, and asking about the northeast quarter of northeast quarter, as the first forty, I will ask you what you found as to the character of this particular forty?

"A. It has been four or five years since I was over that land, but as well as I remember the northeast quarter of northeast quarter had a part of a field on it on the east side.

\*   \*   \*   \*

"Q. You say on the north forty there is land that was in cultivation?

"A. As well as I remember.

"Q. On the east side of the forty?

"A. Yes, sir.

"Q. How far down towards the south forty did this extend?

"A. Might have run on down in it.

"Q. Did you walk the west side of that eighty to see?

"A. I did not run that line.

\*   \*   \*   \*

"Q. You would not testify that none of that south forty had ever been in cultivation, would you?

"A. No, I would not. As well as I remember, most of it was in the bottom.

"Q. Whose field was that on the east side of it?

"A. Mr. Rockett's.

\*   \*   \*   \*

"Q. Could you tell from the condition of the land whether it had been cleared recently or at a remote period?

"A. A long time.

"Q. How long have you known Mr. Rockett?

"A. Eight or ten years.

"Q. Had he been living at the same place during the time of your acquaintance?

"A. Yes, sir."

This suit was commenced on August 24, 1921.

More than ten years prior thereto defendant had purchased the property in controversy in good faith by title translative of property, had at once taken possession and continuously remained in possession thereafter. His title is good by prescription.

Plaintiff contends, however, that prescription could not run in defendant's favor for the reason that until the issuance of patent to him by the state, March 21, 1906, the title was in the state and prescription does not run against the state.

The answer to that is that at the time of the issuance of the patent defendant was in actual possession of the land under title translative of property as owner and continued in such possession for more than ten years thereafter; so that the prescriptive period ran in his favor after the state parted with its title.

But even were it otherwise, plaintiff's position would not be bettered for the reason that the patent under which he claims was issued in violation of a prohibitory law and therefore void.

Act No. 21 of 1886 forbids the entry or purchase of lands possessed, improved or cultivated by an adverse claimant.

The patent to plaintiff issued on May 21, 1906.

At that time the land was "possessed, improved" and "cultivated" by defendant and could not legally be entered or purchased from the state by plaintiff's author.

It was so expressly held in Albritton vs. Shaw, 148 La. 227, 87 South. 32, and Al-

britton vs. Steere, 153 La. 561, 96 South. 121.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.