## No. 13,155.

MRS. FANNIE B. RANDOLPH vs. MRS. DORA STARK, WIFE OF T. O. STARK.

51 1121
105 603
51 1121
13 332

### SYLLABUS.

1.  The joint nature of the principal obligation does not necessarily negative the indivisibility of the mortgage by which the obligation is secured. An indivisible mortgage frequently secures a divisible debt.
2.  Where two persons joining in a joint personal obligation secure the whole indebtedness by a mortgage on certain property in its entirety which belongs to them in indivision, each owner stands as surety for the other for the portion of the debt beyond that owed personally by herself.
3.  If two debtors bound only jointly have mortgaged their common property in its entirety for the whole debt, each of the debtors is bound "with the other," the mortgage being indivisible. If one pays the whole debt, subrogation takes place in his favor.
4.  The subrogation acquired under Art. 2161 of the Civil Code by a purchaser who employs the price of his purchase in paying the creditors to whom the property is mortgaged is a special one. It is an equitable defensive subrogation intended to consolidate the property in the hands of the purchaser and protect him from eviction therefrom at the instance of other creditors. When the amount paid by the purchaser to the mortgage creditors does not exceed the purchase price, the subrogation acquired by him is limited to the property purchased and does not confer rights upon him to be actively exercised against third parties.

ON APPEAL from the Tenth Judicial District Court for the Parish of Avoyelles. *Cullom, J.*

---

*Wm. Hall* and *Wm. H. Peterman* for Plaintiff and Appellant.

---

*E. Howard McCaleb* for Defendant and Appellee.

---

*A. J. Lafargue,* Attorney and Curator *ad hoc, pro se.*

---

Argued and submitted May 4, 1899.
Opinion handed down May 15, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J.  As this case comes before us on appeal by plaintiff from a judgment of the District Court sustaining an exception of no cause of action, and to ascertain the correctness or incorrectness of the judgment a critical examination of the petition is necessary, it is copied in full.

The plaintiff alleges:

That defendant, Dora Stark, wife of T. O. Stark, from him separated in property by ante-nuptial contract, is indebted to her in the sum of four thousand two hundred and seventy-three dollars, with interest thereon at eight per cent per annum from the 1st of March, 1884, until paid, for this, to-wit: That she and the defendant, Dora Stark, who are sisters and forced heirs of their father, Wm. M. Lambeth, became jointly indebted to Mrs. Rosetta Rhea, widow of John Rhea, of Madison County, State of Indiana, in the sum of eight thousand and nine hundred and seventy 12-100 dollars, with eight per centum annual interest thereon from January 1st, 1868, until paid, which indebtedness was evidenced by the joint promissory note of Mrs. Randolph and her sister, then Dora Lambeth, the same being secured by mortgage upon two tracts of land known, 1st, as the "Leinster" plantation, and 2nd, as the Fauckland tract inherited by them from their father and at the aforesaid date of said mortgage held by them in indivision as his heirs, a certified copy of which said mortgage showing a detailed and accurate description of said lands is hereto annexed and made part hereof for proof and certainty.

Now your petitioner further shows that the amount due by the terms of said note and mortgage was reduced from time to time by payments made in equal proportions from funds belonging to your petitioner and her sister, the defendant, Dora Stark, until the 28th day of April, 1878, when by notarial act executed on that date before one Trist, Notary Public in and for the city of New Orleans, T. O. Stark, husband of defendant, Dora Stark, and then acting as agent of his said wife and of your petitioner, declared that said note secured by the aforesaid mortgage has been reduced by partial payments, all arrears in interest having been paid, to the sum of seven thousand five hundred and seventy-seven dollars and thirty-four cents, and payment of this balance was by the terms of said act extended by Victor Oliver, Esq., agent of said Mrs. Rosetta Rhea and party to said act to the first day of March, A. D. 1884, interest thereon to be paid at

.the rate of eight per cent per annum, from the said 28th day of .April, 1893, all which appears from a certified copy of said act hereto annexed for proof and certainty.

Now your petitioner further shows that on the ninth day of January, A. D. 1873, she and her said sister, the defendant, Mrs. Dora Starke, made a voluntary partition of the lands burdened by the aforesaid mortgage of Rosetta Rhea whereby your petitioner took .as her part and share of said lands lot described in act of partition .as number one, containing the sugar house field on Leinster plantation and lands north of it and west of the public road leading to Marksville, and her said sister, Dora Stark, took *inter alia* as her share .in the division of said lands, lot described as number 2 in the act of partition, being that part of Leinster plantation in sections 13, 14, 23 and 24, south and east of the public road leading past Stanley's Mill towards Marksville; and also lot described as No. 3 in said act of partition, being that part of Leinster plantation in sections 34 and 35 as appears by said act, passed January ninth, 1873, and filed of .record of said parish of Avoyelles on February 1st, 1873, to which .reference is hereby specially made.

Now your petitioner further represents that some two years after the date of said partition, to-wit, in May, 1875, petitioner mortgaged the lands allotted to her therein to a certain commercial firm, .domiciled in the city of New Orleans, and known as Johnson & Goodrich, to secure the principal sum of eight thousand dollars, which mortgage was subsequently, in October, 1875, acquired by G. W. Sentell & Co., in liquidation by subrogation from said Johnson & Goodrich, and on the 24th day of December, 1883, judgment was rendered in suit No. 7049 of the docket of your honorable court, entitled G. W. Sentell & Co., in liquidation, et al., vs. Fanny B. Randolph et al., ·in favor of the plaintiff therein and against the defendant, your petitioner, accompanied by a decree for the sale of the said mortgaged ·property.

Your petitioner further shows that under this decree on the 1st day of March, A. D. 1884, the sheriff of the parish of Avoyelles sold that portion of the Leinster plantation allotted to your petitioner by the terms of the partition aforesaid and included in the said Johnson & Goodrich mortgage, and that the same was adjudicated to George W. Sentell for the price and sum of $12,002.

Your petitioner further shows that the foregoing mortgage of Mrs.

Rosetta Rhea, being on record at the date of the adjudication as aforesaid to George W. Sentell, and ranking in lien the said Johnson & Goodrich mortgage, Sentell, adjudicatee, retained in his hands from the amount of his bid a sum sufficient to pay the same, being in principal the amount of $4873. .

Your petitioner further shows that said principal sum so retained by the said Sentell, was by final decree of the Supreme Court of the United States rendered on the 14th day of May, A. D. 1894, in the case of Groves vs. Sentell, 153 U. S., p. 4657, No. 278 of the docket for October term, 1893, on appeal from the Circuit Court of the United States for the Eastern District of Louisiana, awarded said appellants, heirs or legal representatives of said Rosetta Rhea, and went to the payment and satisfaction of her above described mortgage indebtedness.  ‾

Now your petitioner further shows that all the obligations assumed by her and her said sister, Dora Stark, under and by virtue of the act of purchase and mortgage heretofore recited, executed January 1st, 1868, in favor of the said Rosetta Rhea, was a joint obligation, that the purchase therein and thereby made was a joint purchase, and that the price for which your petitioner and her said sister bound **themselves by said act and the note given in evidence of the obligation** therein contained was a joint and not a several liability, and therefore in no event as against the said Mrs. Dora Stark, could your petitioner be liable for more than one-half of the same.

Your petitioner further shows that by various payments made by her individually and out of her separate and individual funds and from the proceeds of sale of her individual and separate property made from time to time, she overpaid her virile share of the said Rosetta Rhea debt and mortgage, and paid on account of the virile share of her co-debtor, the said Mrs. Dora Stark, the aforesaid sum of four thousand two hundred and seventy-three dollars, and that the amount of this overpayment existed on the 1st day of March, A. D. 1884.

Your petitioner further shows that in virtue of this overpayment arising from moneys advanced by your petitioner, as well as from the proceeds of the sale of her separate property, she became and is legally subrogated to all the rights of the said Rosetta Rhea or her heirs, assigns or representatives, under said promissory note of $8000 and the accessory mortgage securing same, both of date January 1st,

1868, and heretofore particularly described against said Mrs. Dora Stark, petitioner's joint co-debtor, and is by law entitled to have said Rhea mortgage recognized as existing upon and enforced against such part of the immovable property described in said Rhea mortgage as was taken by and allotted to the said defendant, Dora Stark, under the terms of the act of partition made between your petitioner and the said Mrs. Stark, of date January ninth, 1873, said note, debt and mortgage having been kept alive and subsisting by payments on account and by re-inscription.

Your petitioner further avers that said Rhea mortgage was passed and executed by your petitioner and the said Mrs. Dora Stark prior to the time and date of said Mrs. Stark's marriage, and while she was a *femme sole,* and that the consideration of the same enured accordingly to her separate benefit and to the benefit of her separate paraphernal estate.

Petitioner further avers that the said Mrs. Dora Stark, defendant, is an absentee who has no known agent in the State of Louisiana. The premises considered, petitioner prays that service hereof be made upon the said defendant, Mrs. Dora Stark, and upon her said husband, T. O. Stark, for the purpose of aiding, authorizing and assisting his said wife herein and that she be cited in the manner* and form required by the law, to appear and answer to petitioner's said demand; and that after hearing there be judgment in favor of petitioner and against the said defendant, Dora Stark, in the full sum of four thousand two hundred and seventy-three dollars, together with interest thereon at the rate of eight per cent per annum from the first day of March, A. D. 1884, until paid, and that petitioner be recognized as legal subrogee of the said Rosetta Rhea mortgage in so far as the same affects the following described separate property of said Dora Stark covered by said mortgage and allotted to said defendant, Mrs. Dora Stark, in the act of partition aforesaid, to-wit: Lot number 2 being that part of Leinster plantation in Sections 13, 14, 23 and 24, south and east of the public road leading past Stanley's Mill towards Marksville. Lot number 3 being that part of Leinster plantation in sections 34 and 35, and further described on the tax rolls of said parish of Avoyelles, assessed in the name of said defendant, Mrs. Dora Stark, as six hundred and fifty acres on Bayou Clear, Sections 34, 35, T. 1, S. R. 3 E., and three hundred and forty-five acres, twenty improved, in Sections 13, 14, 23 and 24, T. 1, S. R., 2 E., and

that said mortgage be recognized as existing upon said above described lands and be enforced against the same to pay and satisfy the amount of petitioner's aforesaid demand with interest as above set forth.

Your petitioner further prays that a curator *ad hoc* be appointed to defend the said Mrs. Dora Stark in this suit, and that necessary process be served upon said curator *ad hoc,* according to law.

Petitioner also prays for all such other and further orders and decrees as the nature of the case requires, as law and equity permit,. and for general and equitable relief."

## OPINION.

We understand defendant to contend that the note executed in favor of Mrs. Rhea by Mrs. Randolph, the plaintiff, and her sister,. Mrs. Stark, was given for a joint indebtedness, that the mortgage granted by the act as it affected Mrs. Randolph's individual half of the property, was limited to the securing of her personal indebtedness of one-half of the note and was not intended to secure nor did it secure any part of Mrs. Stark's indebtedness, and that as it affected the latter's undivided interest in the property, it was limited to Mrs. Stark's personal indebtedness on the note and was not intended to secure nor did it secure any portion of Mrs. Randolph's indebtedness,. in other words, that the mortgage like the note, was divisible.

That when (after the partition in kind between the two sisters) Mrs. Randolph granted a mortgage securing an individual debt of her own to Johnson & Goodrich, on the portion of the property mortgaged which had been allotted to her, and that mortgage was foreclosed at the instance of G. W. Sentell & Co., who had acquired the Johnson & Goodrich claim, and G. W. Sentell, a partner in that firm, became the adjudicatee of the property and paid the price of his adjudication, defendant's sister, Mrs. Randolph, lost all recourse of every kind against her.

The reasoning by which this conclusion is reached by her we understand to be, that if at the time of the adjudication to Sentell any portion of the Rhea debt was due personally by Mrs. Randolph, that portion was finally and completely extinguished as to everybody by the sale and the purchaser's payments.

That as to any portion of the Rhea debt remaining still unpaid by Mrs. Stark at the date of adjudication, the payment of the same was made not by Mrs. Randolph, but by Sentell or Sentell & Co.

That if subrogation of any kind to Mrs. Rhea's rights of mortgage or other sprung from the payment of that claim by Sentell or Sentell & Co., that subrogation was to Sentell or Sentell & Co., who made the payment, and not to Mrs. Randolph, and that the liability of herself or her property is to the former.

That under Art. 2161 of the Civil Code, "subrogation takes place of right for the benefit of the purchaser of any immovable property who employs the price of his purchase in paying the creditors to whom the property was mortgaged."

That if Sentell or Sentell & Co. paid a portion of their purchase price to Mrs. Rhea or her heirs as holding a prior mortgage on the property adjudicated to them, due by Mrs. Stark, they became as purchasers so paying subrogated to those rights against Mrs. Stark.

The first proposition to which we direct our, attention is as to the extent and character of the Rhea mortgage.

The mortgage in question came under the examination of the Supreme Court of the United States in the case of Groves et al., the Heirs of Mrs. Rhea, vs. Sentell, (153 U. S., 482), and that court, speaking through Mr. Justice White, declared for reasons assigned, that the mortgage covered the whole property indivisibly.

That decision is criticized, but we think its corectness is unquestionable.

As the court said, "the joint nature of the principal obligation does not negative the indivisibility of the mortgage by which the obligation is secured."

An indivisible mortgage frequently secures a divisible debt.	See 23 Ann., Doyal vs. Doyal.

While it is necessary for the existence of a mortgage that there should be an existing principal obligation which it supports, that obligation need not be the personal obligation of the party granting the mortgage.

It is no unusual thing for persons to mortgage their property by way of real security to secure the debts of third persons without coming under any personal obligations themselves.	C. C., 3295, 3296. C. C., 2112, 2013, 2019.

Where two or more persons joining in a joint personal obligation secure the whole indebtedness by a mortgage on certain property belonging to them in its entirety, each owner of the property stands as

to his property as surety for the others for the amounts not owed personally by himself.

This is as true in a joint debt secured in its entirety by an indivisible mortgage as in a solidary obligation. C. C. 2106.

Holding as we must that the Rhea mortgage was an indivisible mortgage covering in its entirety all the property mortgaged to secure it, although the debt secured was the joint debt of Mrs. Randolph and of Mrs. Stark, there could be no question, we imagine, that if Mrs. Randolph had been forced, in order to save her own property, to pay herself directly the indebtedness due by Mrs. Stark, that she would have had recourse back on the latter for all amounts paid for her benefit to the mortgage creditor with subrogation to the rights of that mortgage creditor. C. C. 3052, 3053, 3054.

"Si deux débiteurs simplement conjoints ont *hypotheque* un fonds commun *l'un est tenu avec l'autre* l'hypetheque étant indivisible; si l'un paye le tout il y a donc lieu a subrogation. Ainsi lorsqu'un un immeuble ayant été vendu partiellement a plusieurs l'un des acquéreurs pour échapper a la demande en résolution at déguerpissement formé contre lui par le vendeur non payé le montant intégral de ce qui est du a ce dernier il se trouve par le simple fait de ce payement subrogé contre les autres acquéreurs aux droits du demandeur comme ayant acquitté une dette au payement de laquelle il etait tenu *avec d'autres al pour d'autres.*" (Dalloz, Les Codes Annotés, Code Civil, Vol. 1, under Art. 1251. C. N., Nos. 117-118).

We do not think it would be claimed that the situation would be changed if instead of Mrs. Randolph's paying herself the debt her *property* had been seized and sold by the mortgage creditor to satisfy Mrs. Stark's debt and the proceeds of the sale had been applied for that purpose.

It seems, however, to be assumed that matters would be entirely different if an individual creditor of Mrs. Randolph holding a mortgage on the property allotted to her in the partition, should have seized that property to satisfy his own debt and bought it in himself, and finding a portion of the mortgage debt due to Mrs. Rhea priming his own, still unpaid and due by Mrs. Stark, he should have paid the same.

Under such circumstances it is supposed that the adjudicatee by paying this mortgage debt would have become himself subrogated to the rights of Mrs. Rhea (right of mortgage or otherwise) against

Mrs. Stark and entitled to actively enforce the same against the latter and her property. .

Defendant misconceives, we think, the character, scope and extent of the subrogation acquired under Article 2161 of the Civil Code, by a purchaser, who employs the price of his purchase in paying the creditors to whom this property is mortgaged.

The subrogation here referred to is a special one; it is a "defensive, equitable subrogation intended, as Laurent says, (Laurent, Vol. 18, "De la Subrogation," Section 85), to consolidate the property of the immovable property in the hands of the purchaser and secure him against attacks upon the same, based upon antecedent or subsequent mortgage creditors: it is designed to protect him from eviction from the property.

When Sentell (or Sentell & Co.) became the adjudicatee of the property in execution of their debt, he became debtor to Mrs. Randolph (the *owner* of the property) for the purchase price.

When he paid his bid he paid simply his own debt for which he had received an equivalent consideration.

That fact remained unaffected by the circumstance that being a creditor of Mrs. Randolph or holding mortgage rights upon the property purchased, he applied the proceeds as to a part primarily to Mrs. Rhea as holder of a prior mortgage, and next to payment of himself (or his firm) as creditor. Sentell or Sentell & Co., by payment of the prior mortgage, were placed in position to hold that particular property in its entirety secured in their favor as far as said prior mortgage could afford protection from claims (either antecedent or subsequent) of other mortgage creditors. They would deter other judicial proceedings being brought against it by holding up that claim as entitled in their hands to payment by priority should it be seized and sold *de novo,* and the proceeds of sale distributed.

A subrogation of that character is something other and different from an ordinary subrogation which would entitle the holder of rights acquired through its medium to take active measures against third parties or other property.

Sentell or Sentell & Co., through their purchase of the property and their payment to Mrs. Rhea, acquired no active rights against Mrs. Stark or the property allotted to her in the partition. Laurent (in the work cited) in Section 87, referring to that subject, says: "'L'acquéur qui en payant les créanciers acquitte sa propre dette

peut il invoquer le benefice de l'Article 1251? La Cour de Cassation a décidé la question négativement dans l'espece suivante. Un créancier hypothécaire se rend adjudicataire de l'immeuble hypothêque; son prix étant absorbé par un créancier antérieur il n'est pas utilement colloqué. Pour arriver au remboursement de la crêance il se fait subroger aux droits du créancier qu'il a payé. Ce créancier avait encore d'autres co-débiteurs de la même créance. En vertu de la subrogation l'acquéreur resté créancier de son mendeur prétendit exercer les drcits appartenants au créancier par lui payé son prix. La Cour d'Aix a juge qu'il n'avait droit ni a la subrogation légale ni a la subrogation conventionelle parceque en payant le premier créancier inscrit l'acquéreur avait payé sa propre dette.

"En effet, l'acquéreur s'acquittait du prix dont il était débiteur comme adjudicataire, et en payant sa propre dette, il éteignait en même temps la dette qu'il acquittait, non seulement a l'égard du vendeur, mais aussi a l'égard des autres co-débiteurs; or une créance éteinte n'est pas susceptible de subrogation, lorsque le payement en est fait par celui qui en l'acquittant ne fait que se libérer de ce qu'il doit. Veut-on avoir une preuve certaine, dit la cour, que la subrogation est impossible? Que l'on suppose que l'acquéreur soit subrogé, en vertu de la loi ou de la convention, il aurait en un recours pour obtenir le remboursement d'une partie de le crêance qu'il devait payer avec son prix; c'est dire qu'il ne se serait point libéré de la totalité de son prix d'acquisition.

"Cette décision, tres jurisdique parait néanmoins, au premier abord en opposition avec le texte de l'Art. 1251. La loi accorde la subrogation a l'acquéreur d'un immeuble qui emploie le prix de son acquisition au payement des créances auxquielles cet immeuble était hypothêqué. Or, l'acquéreur ne fait que payer en l'acquit de son vendeur, le prix qu'il lui devait. Donc, dira-t'on, il n'est pas vrai que la subrogation ne puisse exister au profit de celui qui paye un créancier a l'aide de deniers qu'il doit lui meme au debiteur. L'objection repose sur une fausse interprétation de l'article 1251, No. 2, et de la subrogation toute spéciale qu'il établit. Il est bien vrai que l'acquéreur qui paye son prix paye ce qu'il doit et qu'il est cependant subrogé au créancier qu'il désinteresse, mais en quel sens l'est il et a l'égard de qui? Il est subrogé a l'égard des créanciers hypothécaires non payés qui le poursuivraient hypothécairement; le seul but de la subrogation est d'empecher l'éviction de l'acquéreur mais. L'ac-

quéreur n'est pas subrogé aux droits que les créanciers qu'il a désinter-ressé pourraient avoir contre des tiers. Une pareille subrogation supposeraient que l'acquéreur subrogé a un recours a exercer a raison du paiement qu'il fait; et comment aurait il un recours alors qu'il n'a fait que payer ce qu'il doit? La situation de l'acquéreur est tres simple, il est subrogé a l'hypotheque des créanciers pu'il a payé avec son prix pour se défendre contre la poursuite hypothécaires des cré-anciers qui n'ont pas pu ctre payés.

Voila toute la subrogation du No. 2.

Si l'acquéreur lui meme se trouve parmi ces créanciers, il subira la loi commune de tout créancier qui ne peut pas etre payé sur l'immeu-ble hypothêqué, par ce que cet immeuble est grévé de charges au dela de sa valeur; c'est dire qu'il rentre dans la classe des créanciers chiro-graphaires, Il n'a qu'une action personelle, puisque l'action hypothé-caire lui fait défaut. Comme créancier personel il pourra exercer les droits de son débiteur. Si donc le vendeur a des droits contre les co-débiteurs des dettes acquittés moyennant le prix de vente, l'acquéreur pourra les exercer en vertu de l'Article 1166; mais en exerçant cette action il viendra en contribution avec les autres créanciers de son dé-biteur; ce ne sera pas le bénéfice de la subrogation, ce sera le droit commun."

Now if Laurent's views be correct and Sentell or Sentell & Co. did not acquire through the adjudication made to them and the applica-tion of a portion of the purchase price to the payment of the Rhea mortgage debt a right of offensive personal action against Mrs. Stark or a right of real action against the particular property which was allotted to her in the partition, and if defendant's contention be also true that Mrs. Randolph has no right of action of any kind against her on her property, the result will be that Mrs. Stark's debt will have been wholly paid by others than herself and out of property other than her own, with no resulting liability or accountability to any one.

When we say paid entirely out of property other than her own, it will be borne in mind that at the time of the adjudication the un-divided half of the property which was so adjudicated and which had originally belonged to Mrs. Stark and stood mortgaged for Mrs. Stark's debt, had ceased through the partition to belong to her and had gone into the ownership of Mrs. Randolph, who, in order to acquire this ownership, had been compelled to transfer to her sister property of her own of equal value; therefore was it that

the portion of the Rhea debt due by Mrs. Stark at the time of the adjudication was paid entirely out of Mrs. Randolph's property.

It is perfectly clear that Mrs. Stark is indebted to some one by reason of the payment of her debt. It is a matter of indifference to her who that person is, the only legal interest she has in the matter is that she should not be placed in a position where she would be liable to be called upon to pay twice.

We are of the opinion that she has nothing whatever to apprehend from offensive proceedings to be hereafter directed against either herself or her property by Sentell or Sentell & Co., under a subrogation of rights to them under the Rhea mortgage.

If she really apprehends trouble from that direction it will be easy for her to protect herself by making Sentell or Sentell & Co. parties to this suit.

We are not called on in this proceeding to examine into and discuss what the exact positions of Sentell or Sentell & Co. are under the right of equity or subrogation acquired by payment of the Rhea debt through a portion of Sentell's bid, nor to see in what manner that equity is to be worked out in their behalf should it become necessary to do so, nor the legal principles or theory upon and by which its enforcement will rest, nor to follow up and trace the legal consequences either as between Mrs. Stark and her sister, Mrs. Randolph, or as between them and the other parties of the partition in kind made between the two sisters. (C. C. 1338, 1382, 1383). Our duty in the premises will have ceased when we have ascertained as we have done, that this right of equity of subrogation, whatever it may be or whatever may be its scope, is not such a right as can be used hereafter by either Sentell or Sentell & Co., to the prejudice of Mrs. Stark or the property now owned by her.

The present action is one brought *via ordinaria*.

If the plaintiff has asked more relief or other relief than she is entitled to, that fact (which we do not intend to intimate as being the fact), would not have the effect of throwing her out of court on an exception of no cause of action.

Defendant will have full opportunity of defending herself as against any claims not well founded or well grounded which may have been set up.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled

and avoided and reversed, and it is now ordered, adjudged and decreed that defendant's exception of no cause of action be dismissed and the cause re-instated on the docket of the District Court to be there proceeded with according to law.