Henry C. Waldron, plaintiff in this suit, purchased from S.M. Moore on March 5, 1937, all the merchantable pine timber on the SE 1/4 of SE 1/4, Section 9, Township 16 North, Range 5 West, and the NW 1/4 of SW 1/4, Section 10, Township 16 North, Range 5 West, situated in Bienville Parish, Louisiana, for the cash consideration of $500. At the time the Federal Land Bank of New Orleans held a mortgage in the amount of $500 covering the above described land which mortgage, with the necessary homestead waivers, had been executed to it by S.M. Moore and his wife on April 4, 1925.
Before purchasing the timber plaintiff employed a lawyer to examine the title to the property and was advised by him that title was clear and good in S.M. Moore, with the exception of the Federal Land Bank's mortgage. S.M. Moore then applied to the Land Bank for a release of the mortgage, insofar as it covered the standing timber. The Land Bank agreed to release the timber from the mortgage provided $250 of the purchase price of the timber was paid to it to be applied on the mortgage. This was agreed upon and, with the consent of S.M. Moore, plaintiff Waldron paid $250 to the Federal Land Bank and the remaining $250 to S.M. Moore. The Land Bank released the timber from the mortgage by a legally executed instrument made to S.M. Moore. The timber deed was then consummated and placed of record. Waldron thereafter transferred the timber to Woodard-Walker Lumber Company, Inc., which proceeded to cut and remove it.
When S.M. Moore acquired the 80 acres of land above described he was legally married to Dolly Anderson Moore. During that marriage there were born to them three children, all of whom are living. Their mother, Dolly Moore, died during the year 1931, which was after the land had been acquired by purchase by S.M. Moore and prior to the time the timber deed was executed to Waldron. The property therefore belonged to the community of acquets and gains existing between S.M. Moore and Dolly Moore and a half interest therein was inherited by the three children at Dolly Moore's death.
In July, 1939, the three children instituted suit against Woodard-Walker Lumber Company, Inc., for their half interest in the timber. Defendant called in warranty its vendor, Waldron, and he in turn called *Page 30 
in warranty his vendor, S.M. Moore. Judgment was awarded in that case in favor of the three children and against Woodard-Walker Lumber Company, Inc., in the sum of $125 and costs and a like judgment awarded Woodard-Walker Lumber Company, Inc., against Waldron; and a judgment in favor of Waldron in the same amount against S.M. Moore. That judgment has long ago become final.
On May 1, 1941, Waldron filed the present suit against S.M. Moore and the Federal Land Bank of New Orleans in which he prayed for an additional judgment against S.M. Moore in the amount of $125, plus $32.05 court costs paid by him in the former suit of the heirs of Dolly Moore against the Lumber Company.
"Petitioner further prays that there be further judgment in his favor and against the said S.M. Moore, also known as Sid Moore, and against the Federal Land Bank of New Orleans, recognizing and decreeing petitioner's lien, privilege and mortgage and his subrogation thereto and to all the rights, liens and privileges formerly held by the said Federal Land Bank of New Orleans, under and by virtue and as specified in said act of mortgage dated April 4, 1925, and as recorded in Book 5, Page 82 of the amortization mortgage records of Bienville Parish, Louisiana, and decreeing petitioner's rights, liens, privileges and mortgages, together with his aforesaid subrogation thereto on the above and foregoing described one-half interest of the said S.M. Moore in and to, NE 1/4 of SE 1/4, Section 9, and NW 1/4 of SW 1/4, Section 10, Township 16 North, Range 5 West, La. Meridian, Bienville Parish, Louisiana; superior to and outranking the remaining claim of the said Federal Land Bank of New Orleans thereon.
"Petitioner further prays that the said property be ordered seized and sold at public auction and according to law, and that from the proceeds thereof, petitioner herein be paid the amount of his aforesaid claim, lien, privilege, mortgage and subrogation by preference and priority over all other persons and creditors of the said S.M. Moore or Sid Moore, whomsoever, and especially over the Federal Land Bank of New Orleans.
"Petitioner further prays in the alternative, and only in the event and alternative, that if the court should not render judgment herein in his favor against the said S.M. Moore for the additional sum of $125, with interest as aforesaid, then and in that event and alternative that the judgment rendered and signed in his favor against the said S.M. Moore in suit No. 11,966, of the docket of this Court, be decreed and recognized as superior to and outranking the claim of any and all other persons and creditors, with the said S.M. Moore, whomsoever, and especially the Federal Land Bank of New Orleans, and entitling him to be paid from the proceeds of the sale of said property by preference and priority by virtue of said subrogation over all persons, whomsoever."
Defendant filed several exceptions which were referred to the merits and are not urged here. S.M. Moore answered denying that plaintiff was entitled to any judgment in any amount against him, and the Land Bank answered denying that any legal subrogation had taken place in favor of Waldron or that he had any privilege, lien or right on the 80 acres of land on which its mortgage rested which was superior to its mortgage. That the release of its mortgage on the timber on receipt of $250, thereby allowing the timber to be sold free of mortgage, could at most only legally subrogate plaintiff to the rights of the Federal Land Bank in and to the timber for the reason that when the timber was sold and purchased by Waldron, it created a separate estate under Act 188 of 1904. That the Land Bank's mortgage covered the 80 acres of land and that Waldron did not purchase any part of said 80 acres.
The lower court rejected plaintiff's demands in toto and he is now prosecuting this appeal.
Plaintiff relies on the second paragraph of Article 2161 of the Revised Civil Code to support his contention that he was legally subrogated to the mortgage rights of the Land Bank. That the provision is, "Subrogation takes place of right * * * for the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged."
In the case of Randolph v. Stark, 51 La.Ann. 1121, 26 So. 59, the syllabus correctly reveals the finding of the court: "The subrogation acquired under article 2161 of the Revised Civil Code by a purchaser who employs the price of his purchase in paying the creditors to whom the property is mortgaged is a special one. It is an equitable defensive subrogation, *Page 31 
intended to consolidate the property in the hands of the purchaser, and protect him from eviction therefrom at the instance of other creditors. When the amount paid by the purchaser to the mortgage creditors does not exceed the purchase price, the subrogation acquired by him is limited to the property purchased, and does not confer rights upon him to be actively exercised against third parties."
This interpretation of the codal Article is the only sensible interpretation that could be made. Under that authority the only subrogation acquired by the plaintiff herein applied to the timber purchased which became a separate estate from the land itself on which the Federal Land Bank now holds a mortgage.
In the present suit plaintiff is not attempting to protect himself from eviction of the timber which he purchased. He is attempting to exercise a right he claims he acquired when he purchased the timber to collect a judgment he has secured against his vendor of the timber. In our opinion he did not acquire such a right. Furthermore, the $250 was not paid for the purpose of paying the creditors to whom the property was mortgaged, but was paid for the admittedly express purpose of obtaining a release of the timber from the operation of the mortgage and the timber was released from the mortgage. At the time the money was paid to the Land Bank Waldron had no interest to protect which necessitated his paying the money to the Bank. He paid it, not to protect any interest he had at that time, but in order to acquire an interest, namely, the timber free of the Land Bank's mortgage.
We are convinced no legal subrogation affecting the mortgage on the land took place and that plaintiff's demands in that respect were correctly rejected by the lower court. His demand for an additional money judgment against S.M. Moore is not seriously urged here. There is no merit to that claim. He agreed to pay Moore $500 for the timber, which amount he paid. Judgment was secured against him by the heirs of Dolly Moore for $125 and costs and judgment granted him against S.M. Moore in the same amount. To award him the money judgment asked for in this case against S.M. Moore would be to decrease the price of the timber from $500 to $375. The judgment, insofar as it rejects this demand, is correct.
It therefore follows that the judgment of the lower court is affirmed, with costs.