**77 So.2d 5**

**Succession of Charles A. SIREN.**

**No. 41492.**

Dec. 13, 1954.

Rehearing Denied Jan. 10, 1955.

Ernest J. Robin, New Orleans, for administratrix-appellant.

Lazarus, Weil & Lazarus, New Orleans, for opponent-appellee.

MOISE, Justice.

This is an appeal from a judgment maintaining the opposition to the final account of the administratrix, which directed that she place Mrs. May Decuers, the interdict and widow of Charles A. Siren, on the final account as a creditor in the sum of $7,500.

The curatrix of the interdict filed the claim, and she alleged that the separate estate of the deceased, Charles A. Siren, was liable to the interdict in the sum of $7,500. The basis of the curatrix' claim is the payment of a mortgage note during the existence of the community between the interdict and the deceased. The mortgage securing the note was given by the deceased, on certain property purchased on April 30, 1929, before his marriage with Mrs. May Decuers. The property is listed in the final account as the separate property of Charles A. Siren, Mrs. Decuers' husband.

The administratrix, Mrs. Kathryn E. Siren Kibbe, daughter of the deceased, Charles A. Siren, by marriage prior to that with the interdict, answered the opposition, denying that the estate of her deceased father was a creditor of the interdict. She urged that the amount of $7,500 was paid out of the separate estate of the deceased. She alleged that the premises, 1900–02 South Carrollton Avenue, were used as a hardware store operated by the deceased during the marriage of Mrs. Mary Decuers and Charles A. Siren; that the community enjoyed the fruits of the proceeds of the hardware business; and that rent for the premises, which would amount to more than $18,000 for a period of over twenty-one years, should have been charged to the community.

Unfortunately, the members of the community cannot testify, because Charles A. Siren, the husband, is dead, and the wife is interdicted and has been confined to a hospital as a patient for many years. There is no issue of this second marriage.

The documentary evidence submitted shows that on April 30, 1929, prior to his marriage to Mrs. May Decuers on November 25, 1930, Charles A. Siren purchased for a consideration of $15,000 cash real estate bearing Municipal Numbers 1900–02 South Carrollton Avenue in the City of New Orleans. On the same day he mortgaged this property to secure his promissory note for $15,000. The principal and part of the interest were paid during the deceased's second community.

From the evidence disclosed, we are of the opinion that the deceased, Charles A. Siren, borrowed the $15,000 to pay for the property which he purchased on the same day.

Our concern, therefore, is not with the ordinary expenses of the upkeep of the separate property, such as taxes, insurance, repair, etc., or even with repayment of a mortgage given for money enjoyed or used by the community. We have here a case where the property was purchased before marriage, a note secured by mortgage on

the property before marriage and paid during the marriage. This property is listed on the final account as separate property.

To support their case counsel for the administratrix rely upon the decisions in the suit of Succession of Ratcliff, 209 La. 224, 24 So.2d 456, 460, and in the case of Succession of Brunies, 209 La. 629, 25 So. 2d 287. The first named case is not applicable, because of the finding of facts. There our Court held:

"* * * Since the profits of the separate property, under the administration of the husband, fall into the community, it is but just, equitable and proper that the ordinary expenditures required in the production of such profits and in the preservation of the property should be borne by the community."

No fault could be found with that pronouncement.

The second named case, Succession of Brunies, supra, can be differentiated, because there the money borrowed and for which the mortgage was given on the separate property of the husband was used for a community expense, namely, for bills of the illness of the husband.

What was held in the Succession of Lyons, 50 La.Ann. 50, 23 So. 117, 118, is most persuasive of opponent's contention:

"The principle is well settled that conclusive evidence of the receipt by the husband of amounts during the existence of the community, in payment of his individual property, will not of itself be sufficient to hold the community indebted for the amount, where there is no evidence that it was used in buying property which fell to the community.

"We desire to adhere to a principle well settled in our jurisprudence. The property in the community at its dissolution, presumably is owned by the community. It is equally as well settled that the husband or his heirs who seeks an amount furnished by him, and which he claims to have been used in the purchase of community property, *must prove that the price was paid out of his separate funds. The evidence to sustain the claim for the price, handed by the husband, out of his separate fund, to his vendor, must be as ample and satisfactory as if a third person were concerned.*" (Italics ours.)

In Munchow v. Munchow, 136 La. 753, 67 So. 819, 822, the jurisprudence was reviewed at great length, and we held:

"Although the decision in each case has been and must be controlled by its peculiar facts, and no fixed rule has been or can be laid down as to the sufficiency of evidence to support such a claim, our jurisprudence is consistent in this: *That the community does not owe the husband for his separate funds contributed to it, except to the extent that the community is thereby en-*

*hanced at its dissolution, and this must be shown with reasonable certainty."* (Italics ours.)

Then again, in Jefferson v. Stringfellow, 148 La. 223, 86 So. 774, 777, it was held:

"The proof discloses that Russell Maxey, her former husband, acquired his one-fifth interest in the property on November 17, 1899, and he and Daler were not married until February 21, 1903; so that the title was vested in Maxey when he married and belonged to his separate estate at his death, and· not to the community existing between him and Daler; and any payments made thereon during the marriage became a debt in favor of the community against Russell Maxey. R.C.C. art. 2402; Succession of Moseman, 38 La.Ann. 219–221; C.C. art. 2408."

After a collation of the authorities which we have applied to the facts, we now conclude that under the judgment rendered by the district court the appellee would receive $7,500, with legal interest thereon, from the mass of the estate, which would reduce the amount of community to be divided equally between her as curatrix of the surviving spouse and appellant as a legal heir of the decedent. The mortgage of $15,000 on the separate property of the deceased was discharged by and during the community, and the community is, therefore, a creditor of the deceased's separate estate in the sum of $15,000. The appellee-interdict, being entitled to one-half of the community, should, therefore, be recognized as a creditor of the separate estate of the deceased in the sum of $7,500, with legal interest thereon as provided in the judgment of the lower court.

The judgment of the lower court, insofar as it maintains the opposition to the administratrix' account, is affirmed, but it should be amended so as to recognize appellee as a creditor of the separate estate of Charles A. Siren, in the amount of $7,500, with legal interest thereon from November 24, 1951, until paid; and as thus amended, the judgment of the lower court will be affirmed.

Amended and affirmed.