(86 South. 774)

No. 22814.

JEFFERSON et al. v. STRINGFELLOW et al.

(Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

**1. Husband and wife ⊜248½—Property acquired before marriage not community.**

Where title to property was vested in a husband when he married, it belonged to his separate estate at his death, and not to the community existing between him and his wife, and any payments on the property made during the marriage became a debt in favor of the community against the husband, under Rev. Civ. Code, art. 2402.

**2. Mortgages ⊜310—Novation ⊜5—Credit by debtor giving new note of another party for balance owed on old effected novation but did not release mortgage.**

Under Rev. Civ. Code, arts. 2185, 2189, where the effect of a credit was to substitute a new mortgage note for the balance which one of several debtors owed on the old note, and to relieve him from further liability on such old note, there was a novation of his part of the debt by the substitution of a new debtor, the maker of the new note, who purchased the debtor's interest in the property; but there was no proportionate release of the mortgage effected by such novation.

**3. Mortgages ⊜114—Mortgage indivisible although note was joint.**

Although the obligation of the mortgagors and vendees was under a joint, not solidary, note, yet, the whole property being mortgaged for the entire debt, the mortgage was indivisible, and each of the mortgagors mortgaged his interest, not alone for the part which he owed, but likewise bound it for the payment of what was due by every other one of his comortgagors.

**4. Mortgages ⊜427(4)—Holder of note had right to proceed against original parties and to ignore transfer of interest in property and novation.**

Under Code Prac. arts. 63, 65, 98, 734, the holder of a mortgage note had the right to proceed against the original parties to the mortgage and to ignore transfer of an interest in the property from one of the mortgagors to a person who gave his own note, which was credited on the old note and the selling mortgagor relieved from further liability.

**5. Evidence ⊜82—Attorney for minors presumed to have discharged duty.**

In the absence of showing of fraud, the law presumes that the attorney acting under his oath, as a curator ad hoc representing minors and an absentee, has discharged his duty towards those whose interest he represents.

**6. Mortgages ⊜369(5)—Difference in date of note and mortgage held cured by prescription.**

Difference in date of note and mortgage securing it was a matter giving right to appeal, or perhaps to injunction to restrain sale on foreclosure, but was least cured by prescription of five years.

Appeal from Twelfth Judicial District Court, Parish of De Soto; John H. Boone, Judge.

Suit by Isaac Jefferson, tutor, and others, against T. J. Stringfellow and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Parsons & Cook, of Mansfield, for appellants.

E. P. Lee, of Mansfield, for appellees.

DAWKINS, J. Plaintiffs seeks to recover certain undivided interests in the following

described property, situated in the parish of De Soto, to wit:

"The south half of section seventeen; the west half and the west half of the east half and the northeast quarter of the northeast quarter and the southeast quarter of the southeast quarter of section twenty (20); the southwest quarter of the southwest quarter of section twenty-one (21); the east half of the northeast quarter of section twenty-nine (29); the east half of the east half of the east half of the east half of section nineteen (19), all in township fifteen (15), north, range thirteen (13), west, Louisiana Meridian, containing one thousand eighty (1,080) acres, more or less, with the buildings and improvements thereon."

Isaac Jefferson sues as dative tutor for the minors, Hall, Hart, Russell, and Blanchard Maxey, claiming for each of them an undivided one-fortieth interest, and as tutor also for the minors Emma and Lillie Brayboy, alleging the ownership of an undivided one-fiftieth each in said property. The other plaintiffs are Bertie Brayboy Raymond, a married woman, joined by her husband, who claims also a one-fiftieth, and Daler Maxey Davis, joined by her husband, and claiming a one-tenth interest in said lands.

A plea in abatement was filed by defendants as to the demands of Daler Maxey, upon the ground, as alleged by defendants, that there was pending between them and her a possessory action involving the same property, and that she should not be allowed to prosecute this petitory action until that issue was determined. This exception was tried and sustained, and the suit was, as to Daler Maxey, postponed until the termination of the possessory action.

Thereafter, defendants answered, denying the material allegations of the petition, and in the alternative, reconvened for improvements, some called in warranty their vendors, and all prayed that plaintiffs' demands be rejected, but, in event of eviction, for judgment in reconvention for their improvements and for further judgment against their war-

148 LA.—8

rantors; and defendants Stringfellow & Harmon asked, in event the foreclosure proceedings were annulled, for judgment reserving their right to proceed upon the mortgage note, and for the taxes paid.

Defendants also pleaded the exception of no cause of action, which was overruled.

Later, plaintiffs filed an amended petition in which it was set out that the one-fifth interest of Russell Maxey, deceased, former husband of Daler Maxey Davis and father of Blanchard, Hall, Hart, and Russell Maxey, Jr., was acquired prior to the marriage of said Russell and Daler Maxey, and, in event it should be found that the same was the separate property of Russell Maxey, then the interests of the said minors would be a one-twentieth instead of a one-fortieth each, and prayed for judgment accordingly.

Defendants also pleaded the prescription of five years under article 3542 of the Revised Civil Code, and certain judgments of the district court of Caddo parish and of the court of appeals, Second circuit, as res judicata of the issues now involved.

There was judgment for the defendants, and plaintiffs appeal.

### The Facts.

November 17, 1899, Frierson Bros., a commercial partnership, domiciled and doing business in De Soto parish, sold to Billie Brayboy, Henry Brayboy, Jennie Morris, Chestnut Morris, and Harrison Morris, in indivision, 1,080 acres of land in said parish for the price of $1,240, which was represented by the joint (not solidary) note of said vendees for that amount, due November 1, 1900, and in the act of sale a vendor's lien and mortgage upon the property was retained. The act was passed before Frierson, notary public, who, it is alleged, was also one of the vendors and signed the same as such before affixing his official signature as notary. While the act of sale and mortgage, as above

set out, was dated November 17, 1899, the note representing the purchase price bore date November 11th of the same year.

On October 2, 1901, Harrison Morris, one of the purchasers above named, sold his undivided one-fifth interest in the land to Russell Maxey, Sr., for the price of $260, evidenced by one note for that sum secured by vendor's lien and mortgage. All of the five purchasers had been trading with Frierson Bros., for some years, and, on the same day that Harrison Morris sold to Maxey, the former paid up his account in full, and a credit of $287.20 was entered upon the back of the note of $1,240 held by Frierson Bros. as the purchase price of the whole tract. This credit was accompanied by Harrison Morris' signature on the note, and he at the same time turned over to Frierson Bros. the $260 note which he had received from Russell Maxey. Not long after the property was purchased from Frierson Bros., the exact date not appearing from the record, one of the vendees, Henry Brayboy, died, leaving five minor children, three of whom, to wit, Emma, Lillie, and Bertie Brayboy, are plaintiffs in this case.

Thereafter the four original vendees, and Maxey, who had acquired the interest of Harrison Morris, continued to do business with Frierson Bros. until May 24, 1904, when they induced Stringfellow & Harmon to buy the notes and take over the financing of their farming operations as Frierson Bros. had been doing. Stringfellow & Harmon paid for the notes so acquired the sum of $1,484 cash, the same having been sent to a bank in Shreveport, La., where the latter lived, and the purchase price collected by the bank. It was understood that all payments made to Stringfellow & Harmon should be applied to the supply accounts of the several parties liable on the notes, and any balance should be credited on the mortgage indebtedness due for the property.

This arrangement went along until the spring of 1907. In the meantime, Russell Maxey had died on August 31, 1905, leaving certain minor children named as plaintiffs herein, and the timber on the land had been, on October 28, 1905, sold to one Lloyd for $1,000, and from which there was placed upon the note for $1,240 a net credit of $656.05.

It appears that some of the owners were meeting their accounts and having something left to apply upon the purchase price of the land, and others were not even paying their accounts in full. This caused dissatisfaction, and an appeal was made by at least some of them to have their interests separated, so that each might pay upon his own part. As above indicated, two of the five owners had died, leaving minors; but after a discussion among all concerned, including the mothers and relatives of said minors, it was agreed that Stringfellow & Harmon should foreclose the original mortgage of November 17, 1899, buy in the property, and thereafter deed over to the respective parties their proportionate parts whenever they should each pay therefor, or a sufficient amount to justify Stringfellow & Harmon, at their discretion, in making the conveyance.

Accordingly, foreclosure proceedings were prepared by S. C. Fullilove, attorney at Shreveport, son-in-law of Stringfellow and brother-in-law of Harmon, who had been consulted by both sides in regard to working out a solution of the matter along the line above indicated, and taken to De Soto parish, where the property was situated, for execution. He had first signed the name of his firm as attorneys for Stringfellow & Harmon to the petition for foreclosure; but, on discussing the matter with C. W. Elam of Mansfield, it was decided that it would be better for Elam to represent the plaintiffs for the reason that he was on the ground and could better look after the matter as their attorney. Thereupon the name of Fullilove's firm was

stricken from the petition, and Fullilove was appointed curator ad hoc for the two sets of minors; that is, of Henry Brayboy and Russell Maxey, and also for the absentee, Harrison Morris.

After due advertisement, the property was sold and bought in by Stringfellow & Harmon on their mortgage indebtedness at the price of $875. The amount due, according to the writ of execution, was $687.90, with 8 per cent. per annum interest from October 29, 1905, to June 1, 1907, and 10 per cent. attorney's fees, or a total of $852.87, and upon which, after payment of costs of sale, there was applied a net sum of $808.19.

Subsequently, some of the parties interested under the original purchase from Frierson Bros. made satisfactory payments to or arrangements with Stringfellow & Harmon and received deeds to their proportions of the land. Others did not, and among the latter were the present plaintiffs, or the interests which they represent.

On May 31, 1912, Daler Maxey Davis and husband, for herself and on behalf of her minor children, Hart, Hall, Blanchard, and Russell Maxey, Jr., and Bertie Brayboy (all plaintiffs in the present suit), and the heirs of Jennie Morris (some minors and others majors), and Harrison Morris, filed suit in the district court of Caddo parish, claiming certain undivided interests in the property now in contest, upon grounds similar to those now urged, and prayed that the sheriff's sale of June 1, 1907, be annulled, and, in the alternative, that Stringfellow & Harmon be compelled to furnish them itemized statements of their indebtedness to said firm, and upon payment of same that said defendants be ordered to convey the property to them, in accordance with the alleged agreement under which the foreclosure was made.

In that proceeding, the plaintiff's demands were dismissed as in case of nonsuit.

There was also another suit filed by Chestnut Morris, the date of which is not disclosed by the record, but which we find it unnecessary to mention further for the reason that he is not party to the present suit, nor is the interest which formerly belonged to him involved.

## Opinion.

Plaintiffs attack the foreclosure on the following grounds:

(1) In so far as the interests owned by Daler Maxey and the heirs of Russell Maxey, Sr., is concerned, that the execution issued on a paid note and extinguished mortgage.

(2) That the minor children of Russell Maxey and Henry Brayboy were not legally represented in the foreclosure proceedings.

(3) That the order of executory process was illegally issued, for the reasons:

(a) The note bore one date and the mortgage another.

(b) There was no authentic evidence of the transfer to Stringfellow & Harmon.

(c) The act of sale and mortgage was passed before a person as notary who was also one of the vendors in the same deed.

[1] In so far as any claim by Daler Maxey Davis, individually, is concerned, the proof discloses that Russell Maxey, her former husband, acquired his one-fifth interest in the property on November 17, 1899, and he and Daler were not married until February 21, 1903; so that the title was vested in Maxey when he married and belonged to his separate estate at his death, and not to the community existing between him and Daler; and any payments made thereon during the marriage became a debt in favor of the community against Russell Maxey. R. C. C. art. 2402; Succession of Moseman, 38 La. Ann. 219–221; C. C. art. 2408. Hence it follows that Daler Maxey Davis is without interest to prosecute this suit.

[2, 3] Under the first of the grounds of attack above enumerated, it is contended that

the credit of $287.20, indorsed on the back of the note foreclosed upon as paid by Harrison Morris, had the effect of extinguishing the mortgage as to the one-fifth interest which he had, on the same day, sold to Russell Maxey. The record shows that this credit consisted of the mortgage note for $260 which Morris received from Maxey as the purchase price of his interest, and a few dollars additional, embracing his part of the accumulated interest on this note for $1,240. The effect was to substitute the new note of $260 for the balance which Harrison Morris owed on the old, and to relieve him from further liability on the latter. In other words, there was a perfect novation of his part of the debt by the substitution of a new debtor. This was both the intention, as disclosed by the proof, and the effect produced in law. R. C. C. arts. 2185, 2189. However, in the act of mortgage by which Frierson Bros. sold to the five purchasers, the whole property was mortgaged for the entire debt. In other words, it was indivisible, and each of the mortgagors, including Harrison Morris, mortgaged his interest, not alone for the part which he owed, but likewise bound it for the payment of what was due by every other one of his co-mortgagors, and there was no release, on the record or otherwise, of the mortgage. Randolph v. Stark, 51 La. Ann. 1121, 26 South. 59; Groves v. Sentell, 153 U. S. 465, 14 Sup. Ct. 898, 38 L. Ed. 785. The property was not sold to pay this $282.50 representing the amount paid by Harrison Morris, for the credit therefor was duly computed in determining the amount due under the execution, as well as the other credits on the note.

[4, 5] As to the second and third grounds of attack, it is sufficient to say that, as to the heirs of Russell Maxey, it was not necessary that they be made parties defendant under the pact de non aliendo, for the holder of the note had the right to proceed against the original parties to the mortgage and to ignore the transfer from Harrison Morris to Maxey. C. P. arts. 63, 65, 98, 734; Avegno v. Schmidt & Ziegler, 35 La. Ann. 585; Taylor v. Pipes, 24 La. Ann. 553. With regard to the other minors, there is no proof to support the idea that there was any intent to defraud or any fraud committed against their interests. Fullilove was appointed curator ad hoc to represent the minors and the absentee, and there is nothing to show that he acted in bad faith, but it is clear that he was attempting to do what was conceded to be for the best interest of all concerned at the time. In the absence of a showing of fraud, the law presumes that the attorney acting under his oath, has discharged his duty towards those whose interest he represents. Cooley v. Seymour, 9 La. 274; Beaumont v. Covington, 6 Rob. 189.

There was no proof that the notary who passed the act of sale from Frierson Bros. to Brayboy and others was also one of the vendors.

[6] With respect to the difference in date of the note and the mortgage, this was a matter which gave right to appeal, or perhaps to an injunction to restrain the sale, and is at least cured by the prescription of five years pleaded by defendants. Fried v. Marrerro, 137 La. 778, 779, 69 South. 172; Richardson v. McDonald, 139 La. 655, 71 South. 934. In any event, it is not seriously contended that there was not due to the plaintiffs in execution the amount claimed by them, and the only result would have been to have forced them to proceed by an ordinary action, and there has been, therefore, no showing of injury to the minors—at least, none sufficient to cast a shadow of bad faith upon the conduct of the curator.

For the reasons assigned, the judgment appealed from is affirmed at the cost of appellants.