25 So.2d 287

Succession of BRUNIES.

No. 37690.

Feb. 11, 1946.

H. W. Robinson, of New Orleans, for Mrs. R. O. Brunies, testamentary executrix, proponent, appellant.

Stanley A. Baron, of New Orleans, for Mrs. John H. Adolph, opponent and appellee.

HAWTHORNE, Justice.

Mrs. Mary Frances McNamara Brunies, widow of Richard O. Brunies, named as testamentary executrix of the said Richard O. Brunies in his last will and testament with seizin and without bond, having qualified as such and having caused an inventory to be made, is appealing to this court from a judgment of the district court maintaining the opposition filed to her final account by Mrs. Milton Jones, Mrs. John H. Adolph, and Mrs. William McConville, daughters of the deceased, ordering that certain items, namely, insurance, taxes, interest, and mortgage loan installments, amounting to a total of $7,133.09, be stricken from said final account, and further ordering that said testamentary executrix pay to the separate estate of the decedent rent on a dwelling occupied by her, situated on property belonging to decedent's separate estate, at the rate of $30 per month beginning on April 1, 1944, and continuing until she, the said executrix, surrenders possession thereof.

In the final account filed by the executrix, the following amounts were claimed as due to the community of decedent and his wife for advances made by said community to pay the debts of decedent's separate estate, to-wit:

Insurance premiums paid on property belonging to decedent's separate estate .................. $ 768.32
City and state taxes paid on property belonging to decedent's separate estate .................. 3008.80
Interest paid on homestead loans secured by mortgages on property belonging to decedent's separate estate ............... 701.11
Principal paid on homestead loans secured by mortgages on property belonging to decedent's separate estate ............... 2654.86

$7133.09

The trial judge maintained the opposition of opponents to the above named items and ordered them stricken from said final account.

Richard O. Brunies died on December 17, 1943, leaving three daughters by a prior marriage, the opponents herein, and his widow, Mrs. Mary Frances McNamara Brunies, to whom he was married on March 3, 1936. By last will and testament he bequeathed to his wife certain real estate in the City of New Orleans on which there is situated a double house bearing Municipal Nos. 316–318 Joseph Street, the contents of this house, his automobile, and his jewelry, and to each of his daughters, Mrs. Milton Jones, Mrs. John H. Adolph, and Mrs. William McConville, he bequeathed a double house on Annunciation Street. The residue of his estate he be-

queathed to his widow, whom he named and appointed testamentary executrix of his estate with seizin and without bond.

All of the real estate described in the last will and testament of Richard O. Brunies belonged to his separate estate, having been acquired prior to his marriage to Mrs. Mary Frances McNamara Brunies on March 3, 1936. However, the property on which the three double houses were situated, bearing Municipal Nos. 5614–5616, 5608–5610, and 5620–5622 Annunciation Street, the property bequeathed to his daughters, was sold for the sum of $15,700 on June 16, 1943, a few months prior to the testator's death.

Evidence adduced at the trial on the opposition in the lower court discloses that the deceased was in bad health during his marriage to appellant, and, since he was unemployed during all this time with the exception of two short periods in 1943, his earnings were practically negligible. During this same period of time, appellant operated a beauty parlor from which she realized a net income of $500 or $600 annually, which she testified was used to defray general household expenses. She testified also that she had no money or property when she and deceased were married.

The principal source of income during the marriage between appellant and the deceased was the rent from real estate belonging to the separate estate, situated on Annunciation and Joseph streets, which revenues amounted to $169 per month, or in excess of $15,000 from March 3, 1936, the date of the marriage, to December 17, 1943, the date of the testator's death.

Due to Mr. Brunies' illness, their combined earnings were not sufficient to pay their living expenses and his medical bills. It therefore became necessary from time to time to borrow sums of money and secure such loans by mortgages on property belonging to his separate estate. The principal and interest on these loans were paid in installments, and the balance due thereon was paid in full from the proceeds of the sale of his separate property on Annunciation Street, which he sold, as stated hereinabove, on June 16, 1943, for the sum of $15,700.

It is clear that the revenues received from decedent's separate estate, including the rent and the sale price of a portion of said property, were more than sufficient and greatly exceeded the amounts due thereon for loans, interest, insurance, and taxes, which items the executrix has set up on her final account as constituting a debt due the community by the separate estate.

Counsel for the executrix contends in this court that the revenues from property belonging to decedent's separate estate belonged to the community, under Revised Civil Code, Article 2402, and that necessary expenses for the maintenance and preservation of the property belonging to said separate estate, paid from these revenues, created a debt of the separate estate in favor of the community.

That part of Article 2402 of the Revised Civil Code relied on by counsel reads as follows: "This partnership or community

consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife * * *."

We do not think that this article is authority for, or supports, counsel's contention, which has been fully answered by the case of Succession of Ernest R. Ratcliff, 209 La. 224, 24 So.2d 456, 460, and other decisions of this court analyzed and discussed therein.

In that case, the husband had entered into a contract dissolving the community of a second marriage, in which he agreed to pay to the wife $120,000 for her interest in the community estate. Being without funds to consummate a cash transaction, he agreed to pay an annuity or interest or rent charge for the privilege of deferring payment of the stipulated purchase price to an indefinite date. After his death, upon settlement of his estate his executors listed all the revenue from his separate property as community property of a third marriage, which revenue greatly exceeded the total disbursements made during the existence of the community with his third wife for the contracted annuity, and they debited the community for these annuity payments. The widow contended that it was improper to take these payments out of the community inasmuch as the debt, contracted prior to the marriage, should be satisfied from the corpus of the separate estate. We said: "* * * Had that agreement not been confected, or if after its confection the described interest or annuity or rent had not been paid, decedent's separate estate would have been denied assets from which there was derived a great portion of the income listed by the executors on their annual account as receipts of the community. The logical consequence of this, it seems to us, is that the disbursements made in satisfaction of the charge should be deducted from the community receipts, they constituting nothing more than ordinary expenditures in behalf of the preservation of the separate estate from which the community income or profit was produced."

This court denied the widow's contention, stating: "* * * Since the profits of the separate property, under the administration of the husband, fall into the community, it is but just, equitable and proper that *the ordinary expenditures required in the production of such profits and in the preservation of the property should be borne by the community.*" (Italics here and elsewhere are ours.)

The cases analyzed and discussed in the Ratcliff case are the following:

In Wilcox v. Henderson, 9 La.Ann. 347, we held that the fruits of the wife's paraphernal property, under the administration of the husband, belonged to the community, but that the community must bear the charges of the cultivation thereof as well as other incidental expenses.

The decedent in Succession of Boyer, 36 La.Ann. 506, had, prior to a second marriage, bought a house which was used as a residence during said second marriage. The administratrix in her final account charged the community $8,400 for rent on

the residence during the time of the second marriage, subject to a credit of $4,123.96 which the community had expended for taxes and insurance on the property. This court affirmed the judgment of the lower court ordering these items stricken from said account, saying: "As the revenues of the separate property of either spouse belongs [belong] to the community, and as the community is properly chargeable with the taxes, repairs and insurance on the separate property used by it, the debit and credit as to these items was, by the terms of the judgment, properly stricken from the account."

We said in the case of Courrege v. Colgin, 51 La.Ann. 1069, 25 So. 942:

"Where the husband, for the community, cultivates a plantation, the separate property of the wife, the indebtedness incurred in such cultivation is a liability of the community, and the wife cannot be individually held for same.

" * * * the community, enjoying, as it did, the usufruct of the wife's landed estate, ought, in good conscience, to be chargeable with the taxes on the same."

In Sharp v. Zeller, 110 La. 61, 34 So. 129, 135, appellees prayed that a judgment in favor of Henry Zeller be reduced by the sum of $2,481, the amount paid by Zeller after a second marriage in settlement with four of his children by a prior marriage. In that case the children of the first marriage had a mortgage bearing interest upon the separate property of their father by reason of its having once belonged to the community between him and their deceased mother and subsequently adjudicated to him under Article 343 of the Civil Code. In settlement with these children he paid them $2,481 out of the rents realized from this property during the second marriage, and this court, in refusing to reduce the judgment as prayed for by appellees, said: "We think that Zeller was authorized to apply the rents of the property mortgaged to the payment of the children, using only *the balance as profits for the benefit of the community.*"

In the case here under consideration, the revenues from the separate estate of the decedent, together with the sale price of a portion of the property belonging to said separate estate, were more than sufficient and greatly exceeded the items of insurance, taxes, and interest and principal on the loans secured by mortgages on property belonging to said separate estate, and, these items being necessary expenses for the maintenance and preservation of the property belonging to decedent's separate estate, we think the judgment of the lower court ordering these items stricken from the final account filed herein is correct.

It it true that the revenues from the property belonging to the separate estate in this case fell into the community of acquets and gains which existed between Mrs. Richard O. Brunies and her deceased husband, and, as these revenues exceeded the amount necessary to pay the contested items, these items, which were expenses necessary for the maintenance and preservation of said separate estate, were a liability of the community.

Counsel for appellant cites numerous cases in support of his contention, but we do not think that they are applicable to the issues herein involved.

■ It is our opinion that the judgment of the lower court ordering appellant to pay to the separate estate of the decedent rent on a dwelling occupied by her, situated on the property belonging to decedent's separate estate, at the rate of $30 per month, beginning on April 1, 1944, and continuing until she surrenders possession thereof, is incorrect and should be reversed.

The dwelling occupied by appellant is located at Municipal No. 318 Joseph Street and is situated on property bequeathed to her in the last will and testament of the deceased, which last will and testament, as hereinabove stated, named and appointed Mrs. Brunies testamentary executrix with seizin and without bond. This property was occupied by the deceased and appellant prior to his death as their common dwelling, and Mrs. Brunies has continued to reside there.

Article 1627 of the Revised Civil Code provides: "The legatee is not bound to demand the delivery of the legacy, if the thing bequeathed to him is in his possession at the time of the opening of the succession, but he is bound to give it up for the purpose of contributing to the payment of debts, in case it be liable for any."

Article 1628 reads as follows: "Neither is the testamentary executor, who has the seizin of the effects of the succession, and who is at the same time a legatee, bound to demand the delivery of his legacy; he can retain it in his possession subject to the same restitution."

Under the provisions of these articles, Mrs. Brunies was not required to make demand for delivery of the legacy because it constituted property bequeathed to her and was in her possession and because in said last will and testament she was named testamentary executrix with seizin and was at the same time a legatee of the particular property.

It is true that under Article 1629 of the Revised Civil Code the legatee who of his own authority takes possession of a legacy is bound to restore the fruits and pay the interest of all moneys of which he may have possessed himself. However, as pointed out hereinabove, Mrs. Brunies, under the plain provisions of Articles 1627 and 1628, had full authority to retain the property in her possession without the necessity of making demand for the delivery thereof.

■ Under Article 1631 of the Revised Civil Code, the interest or proceeds of the thing bequeathed shall accrue to the benefit of the legatee from the day of the decease, without his having brought suit for the same, in two instances only: (1) When the testator has expressly declared in his will to this effect, and (2) when an annuity or pension has been bequeathed by way of maintenance. This article has no application here because it applies to legatees who are required to demand delivery of the legacies and not to legatees who come within the provisions of Articles 1627 and 1628, quoted hereinabove.

In McNeely v. McNeely, 50 La.Ann. 823, 24 So. 338, 342, we said:

"We are of the opinion that when the universal legatee is himself the testamentary executor appointed by the will, and on his petition to the court the will has been probated and ordered executed according to its tenor, and he has qualified and taken into his actual possession the property of the succession, and assumed the liquidation of the estate, *there is no basis whatever for the contention that the fruits and revenues of the thing or objects legally bequeathed to the universal legatee belong to the heir.* * * *

"Article 1628 of the Civil Code declares that the testamentary executor who has the seizin of the ·effects of the succession, and who is at the same time a legatee, is not bound to demand the delivery of his legacy; that he can retain it in his possession subject to the obligation mentioned in article 1627 of being bound to give it up for the purpose of contributing to the payment of debts in case it be liable for any. It is true that article 1628 has direct reference to the case of a testamentary executor who is a particular legatee, but we think the provisions of that article fairly extend to the case of a universal legatee situated as is the universal legatee under the circumstances of this case, *in their bearing upon the question of the fruits and revenues of the thing legally bequeathed to the universal legatee.*"

On July 5, 1944, the date on which the judgment was signed in the lower court, from which judgment this appeal was taken, the executrix in that court ruled opponents, heirs of decedent, to show cause why she should not be delivered this particular legacy as well as the other property bequeathed to her in the last will and testament of her deceased husband. She alleged that she had filed her final account as testamentary executrix which provided for the payment of all debts of said succession, and that she was therefore entitled to the delivery of the legacy of the properties in question. No action was taken on her application for this rule by the lower court prior to the granting of orders and the perfection of the appeal to this court.

■ In brief filed in this court the executrix contends that the judgment of the lower court should be amended so as to require her to pay rent only from April 1, 1944, to the date of demand of delivery of the legacy, July 5, 1944, the date the above rule was filed. She bases her contention on the provisions of Article 1626 of the Revised Civil Code, to the effect that a particular legatee can take possession of the thing bequeathed, or claim the proceeds or interest thereof, only from the date the demand for delivery was formed.

The appeal in this case was taken from the judgment of the lower court ordering the executrix to pay rent of $30 per month from April 1, 1944, until she surrenders possession of the property, and, the executrix having appealed therefrom, the correctness of this order is the question now before us. It is true that appellant in brief assumes that under the law she was compelled to pay rent until demand was made for delivery of the property, but in our

opinion her assumption in this respect is incorrect for the reasons given hereinabove.

In this court Mrs. Brunies, individually and not as testamentary executrix and appellant, has filed a petition setting forth that she has acquired by purchase all of the rights, title, and interest of Mrs. Helen Brunies McConville and Mrs. Gertrude Brunies Jones-Barrett, as heirs of the deceased Richard O. Brunies, in and to said succession (except their interest in a suit pending in the Parish of Jefferson and also their right, title, and interest in and to a cemetery lot in Metairie Cemetery), and has attached thereto certified copies of the respective acts of sale. In this petition she prays for recognition by this court of said purchases, and that the opposition of the vendors therein be overruled and dismissed.

We see no reason for dismissing the opposition herein as to these two parties or in any way changing our decree to be rendered hereafter merely because Mrs. Brunies has acquired all their rights, title, and interest in and to said succession (with the exceptions noted above), for the interests which she has acquired from these two parties cannot be affected in any way by any decree rendered by us.

For the reasons assigned, the judgment appealed from is reversed and set aside insofar as it orders Mrs. Mary Frances McNamara Brunies, testamentary executrix, to pay to the separate estate of the decedent, Richard O. Brunies, rent on a dwelling occupied by her, situated on prop-

erty belonging to decedent's separate estate, at the rate of $30 per month beginning on April 1, 1944, and continuing until she, the said testamentary executrix, surrenders possession thereof; in all other respects the judgment appealed from is affirmed; all costs to be paid by the succession.

O'NIELL, C. J., does not take part.