160 So.2d 359 (1964)
Cleveland J. HARRIS
v.
Clothilde Dolores Jackson HARRIS, His Wife.
No. 1309.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
*360 Clifford P. deLaup, Jr., and Hartman C. Daniel, New Orleans, for plaintiff and appellant.
Smith & Waltzer, Bruce C. Waltzer, New Orleans, for defendant and appellee.
Before McBRIDE, REGAN and YARRUT, JJ.
McBRIDE, Judge.
Defendant wife on her reconventional demand obtained a judgment of separation from bed and board from plaintiff husband and subsequently petitioned for a partition of the community property by licitation, and the court ordered an inventory thereof to be taken. The original and the supplemental inventories show as assets two claims of the community against the separate estate of the husband, one for $3,410 representing funds of the community purportedly paid on the mortgage bearing against No. 3437-39 Baronne Street, the separate property of the husband, and the other for $3,534, purportedly representing funds of the community paid on the mortgage bearing against No. 2321 Terpsichore Street, also the separate property of the husband.
The husband brought a rule against the wife "to traverse and reform inventory" suggesting that the inventories should be rejected because of vagueness and indefiniteness therein; that the claims against the separate estate of the husband are not itemized nor is there a valuation of the said debts, and, further, that the formula used in calculating the amount of the claim of the community against the separate estate was improper.
After a trial of the rule, it was dismissed as to the two aforesaid items and the husband has appealed.
The facts, we gather from the sketchy record herein, are that prior to his marriage with defendant, appellant owned the two pieces of property above-mentioned. He testified there was a mortgage indebtedness bearing against No. 3437 Baronne Street which was contracted in 1954 in the amount of $6,000. We have no testimonial or other proof before us with reference to a mortgage on No. 2321 Terpsichore Street, but there is some documentary evidence which leads us to believe said piece of property was also under mortgage at the time of the marriage.
We find no evidence whatever with reference to the payments the community might have made on account of any mortgage indebtedness resting on the Terpsichore Street property. However, appellant concedes that the payments on the mortgage on the Baronne Street property made by the community amounted to $3,536.11, including principal and interest.
Each piece of property was rented and produced an income during the regime of the community; of course, the revenues belong to the community, which according to LSA-C.C. art. 2402 consist of all of the effects of which the husband has the administration and enjoyment.
The amount of the income and revenue derived from the property cannot be ascertained or computed due to the vagueness of and the conflict in the testimony regarding that point. On a rule concerning alimony the husband testified there was a rental income of about $100 per month. At a later date the wife testified that the rents amounted to $260 per month. On trial of the rule to reform the inventory the husband said the revenues from the two properties aggregated $250 or $300 per month.
Where title to property is vested in a husband when he married, it belonged to his separate estate and not to the community *361 existing between him and the wife, and the aggregate of any payments made on account of an ante-marital debt there-against during the existence of the community became a debt in favor of the community against the husband's separate estate upon dissolution of the community. Jefferson v. Stringfellow, 148 La. 223, 86 So. 774; Matthews v. Hansberry, La.App., 71 So.2d 232. It does not appear that the mortgaged separate property involved in either of the above-cited cases produced any revenue or income during the community.
The holdings in the above-cited cases are in accord with LSA-C.C. art. 2403 which in part reads: "* * * the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."
For a long time in Louisiana the settled rule has been that debts arising during the community in the administration or maintenance of a spouse's separate property whose revenues fall into the community are community debts. See Wilcox v. Henderson, 9 La.Ann. 347 (debts incurred by husband in his management of wife's plantation); Succession of Boyer, 36 La. Ann. 506 (taxes, repairs and insurance premiums on spouse's separate property used by community); Courrege v. Colgin, 51 La. Ann. 1069, 25 So. 942 (debts incurred by husband in his management of wife's plantation).
In Succession of Brunies, 209 La. 629, 25 So.2d 287, the Court held that where revenues received by the community from the husband's separate estate, including rent and the sale price of a portion of the property, were greatly in excess of the amount paid for insurance, taxes, interest and principal on a loan (made after the marriage) secured by mortgages on the property of the separate estate, the husband's executrix was not entitled to set up such items on her final account as a debt due the community by the separate estate. Note that the court cast the community for the amount of principal paid on the mortgages. This was evidently because the loans were made for the benefit of the community and became community debts.
In Sharp v. Zeller, 110 La. 61, 34 So. 129, the holding of the Court was that where real property of a former community dissolved by the wife's death was adjudicated to the husband prior to his remarriage, subject to an interest-bearing mortgage in favor of the wife's heirs, the husband was, after his remarriage, authorized to use the rents of the property to make interest payments on the mortgage, using only the balance as profits for the benefit of the community. The Court said:
"We think that Zeller was authorized to apply the rents of the property mortgaged to the payment of the children, using only the balance as profits for the benefit of the community. Civ. Code, art. 2402."
In Succession of Ratcliff, 209 La. 224, 24 So.2d 456, the husband had entered into a contract for dissolution of the community of his second marriage, in which he agreed to pay the second wife $120,000 for her interest in their community estate. Not having sufficient funds to consummate a transaction for cash, he agreed to pay the second wife an annuity or interest or rent charge for the privilege of deferring payment of the stipulated purchase price to an indefinite date. In other words, the second wife sold to decedent her property on terms of credit, with ample security, for an agreed purchase price of $120,000, that consideration being due at vendee's discretion and bearing five percent per annum interest, payable monthly, such interest being in the nature of an annuity or rent on the unpaid price. After his death, upon settlement of his estate his executors listed all the revenue from his separate property as community property of the third marriage which revenue greatly exceeded the total disbursements made during the existence of the community to his second wife for the contracted annuity, and they debited the community for the annuity payments. The *362 widow contended that it was improper to take these payments out of the community inasmuch as the annuity debt contracted prior to the marriage should be satisfied from the corpus of the separate estate. The case was adjudicated on the basis of the holdings in Wilcox v. Henderson, supra; Succession of Boyer, supra; Courrege v. Colgin, supra; and Sharp v. Zeller, supra, the Court saying:
"The announced holdings of the cited cases have not been repudiated, and we know of no good reason why they should be. They appear to be thoroughly sound. Since the profits of the separate property, under the administration of the husband, fall into the community, it is but just, equitable and proper that the ordinary expenditures required in the production of such profits and in the preservation of the property should be borne by the community.
"* * * Had that agreement not been confected, or if after its confection the described interest or annuity or rent had not been paid, decedent's separate estate would have been denied assets from which there was derived a great portion of the income listed by the executors on their annual account as receipts of the community. The logical consequence of this, it seems to us, is that the disbursements made in satisfaction of the charge should be deducted from the community receipts, they constituting nothing more than ordinary expenditures in behalf of the preservation of the separate estate from which the community income or profit was produced. * * *"
The rule enunciated in Sharp v. Zeller and Succession of Ratcliff was based on equitable considerations; in both of which cases the indebtedness on which the community made payments arose from debts incurred in the acquisition of the separate property, but we think that the rule may as well be applied to interest payments on the mortgage indebtedness due on the husband's property in the instant case. We say this because the husband testified that the proceeds of the $6,000 mortgage which he placed on the Baronne Street property in 1954 were used to repair and improve the Terpsichore Street property, and it would be apropos to say here, just as the Court said in Succession of Ratcliff, supra, that had that mortgage not been created, or after its creation the payments due thereon had not been made, the husband's separate estate would have been denied assets from which there was derived a great portion of the income which fell into the community. In the instant case we think the husband is entitled to apply the rents of the property mortgaged to the payment of insurance premiums, taxes, and interest on the mortgage or mortgages, as well as other ordinary expenditures required in the production of the revenues of which the community was beneficiary using only the balance as profits for the benefit of the community. This would be fully warranted under the above-discussed jurisprudence.
But the evidence in this case is so meager that it will be impossible to determine from the record as now constituted just what the husband's indebtedness to the community is, and a remand of the case seems to be proper. The trial court is directed to retry the rule to reform the inventory and to receive, in addition to that in the record, any and all other evidence the parties wish to produce in order that a determination may be made of the amount of the advances made by the community on the separate property of the husband and also to ascertain the amount of the revenues produced by the property. The revenues of the property should first be applied against the insurance premiums, taxes and interest on the mortgage or mortgages, as well as other ordinary expenditures required in the production of the revenues and the balance, if any, is to be considered as profits for the benefit of the community. If the charges against the separate property are *363 greater than the revenues, then the separate estate of the husband is to be charged with the overplus. Payments by the community on the principal of the mortgage or mortgages are to become a debt of the husband in favor of the community. Judgment should be rendered in accordance with the law and the evidence.
For the reasons assigned, the judgment appealed from insofar as it refuses to reform the inventories as to the sum of $3,410 and $3,534 is set aside, and the matter is remanded; in other respects the judgment is affirmed. The appellee is to pay the costs of this appeal; all other costs are to await a final determination of the matter.
Set aside in part; affirmed in part; remanded.