REDMANN, Judge.
Plaintiff husband appeals from that portion of a judgment of partition of community which charged against him certain items relative to the house which constituted the only marital home but was the separate property of the husband.
The husband agrees that the principal amount of the mortgage payments made from community funds is chargeable against him. He contends that the mortgage interest and taxes and insurance premiums were properly an expense of the community, and the judgment insofar as it charged him with those items should be reversed. We agree.
Plaintiff purchased the house April 16, 1962 for $13,954.98, on terms of $104.98 cash and $13,850 credit, bearing interest and secured by mortgage on the property.
Plaintiff married defendant December 28, 1962, from which date until the community was dissolved he paid $4,093.45 interest on the credit portion of the price, $216.00 taxes and $543.52 insurance premi urns.
Insofar as the taxes and insurance premiums are concerned, we consider the community’s liability settled by the supreme court decisions in Succession of Boyer, 36 La.Ann. 506 (1884), and Succession of Brunies, 209 La. 629, 25 So.2d 287 (1946).
In Boyer, at 36 La.Ann. 515-516 the court observes:
“The administratrix, on her account, charged the community with $8400, for rent of the Terpsichore street [marital] residence, during the time of the second *325 marriage, subject to a credit of $4,123.96 for taxes and insurance on the property.
“As the revenues of the separate property of either spouse belong to the community, and as the community is properly chargeable with the taxes, repairs and insurance on the separate property used by it, the debit and credit as to these items was, by the terms of the judgment, properly stricken from the account.” (Word in brackets supplied.)
Boyer thus indicates both that the community cannot be charged rent for its use of the husband’s separate property as a marital home, and that the husband cannot be charged with the taxes and insurance (and repairs, not here involved) on that separate property so used.[1]
In Succession of Brunies, supra, 25 So.2d at 291, it is recited (in connection with another issue) that a dwelling owned by the husband had been the only marital home. Thus the charging of taxes and insurance premiums on all of the husband’s separate property (the balance of which produced income to the community) included those charges attributable to the separate property used as the marital home.[2]
The wife cites Pennison v. Pennison, 157 So.2d 628 (La.App.1963), writ refused 245 La. 585, 159 So.2d 290 (“On the facts found by the Court of Appeal, the result is correct"). We had noted, 157 So.2d at 631, the community had made mortgage payments “the exact amount of which payments are not shown clearly by the evidence.” The only recited amount was “$50.84 per month”, and the husband’s argument was that the community would have had to pay more than that if. it were renting property. Of course this argument was rejected (as its theory had been by Boyer’s refusing a rent charge against the community). Because the case did not separately treat interest (or taxes or insurance), it is not controlling here (and it surely could not overrule Boyer and Brunies as to taxes and insurance premiums).[3]
As to the interest on the pre-marital debt for the credit part of the price of a house used as the marital home, Moore v. Moore, 255 So.2d 193 (La.App.1971), is the only direct authority we find. It cites Pennison and Boyer, both supra, which we have previously pointed out do not decide the specific question of whether interest in this context is chargeable to the community. Moore’s facts were that each spouse had a house before marriage; the husband’s house was used as the marital home and the wife’s was rented.' The court charged *326 the community with interest, taxes and insurance premiums for the wife’s house, but only taxes and insurance for the husband’s house (the husband’s separate estate being charged with the interest). In our judgment, such inequality of treatment is unjustifiable in legal principle and could lead to interspousal disharmony (husband or wife might each prefer to have the other supply the interest on the family home by living in the other’s house) or to unnecessary expense to the community (if the only way the community can be charged both’s interest is by letting both houses to others and have the community rent yet a third house, at a cost which doubtless would include not only that house’s taxes, insurance premiums, repairs and loan interest but loan principal as well).
Certain principles applicable to the marital property regime are stated by the Civil Code.
Art. 2402. “This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment * * (Emphasis added.)
Art. 2403. “In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.”
Art. 2404. “The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.
* * * * * *
“But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud.”
Appellee here relies on art. 2403’s provision that debts, “anterior to the marriage, must be acquitted” out of separate property, as applicable to both principal and interest of the separate debt.
This is not a correct view. Interest on a separate debt is chargeable to the community where the debt is part of the price of (or secured by mortgage on) separate property which itself produces revenue; Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902); Succession of Ratcliff, 209 La. 224, 24 So.2d 456 (1945); although it is said in Harris v. Harris, 160 So.2d 359 (La.App.1964), that if the total charges against the revenue-producing separate property (including interest) exceed the revenue, the husband’s separate estate is to be charged with the excess.
Appellee cites Matthews v. Hansberry, 71 So.2d 232 (La.App.1954), as holding the contrary. Matthews was noted in Harris, supra, as contrary to Sharp and Ratcliff, both supra, but was distinguished by Harris, at 160 So.2d 361, as not involving revenue-producing property. To the extent that Matthews may have involved revenue-producing property, it must be considered repudiated by Harris (where two of the three judges were the same) as inconsistent with the supreme court rulings of Sharp and Ratcliff.
Of Talbert v. Talbert, 199 La. 882, 7 So.2d 173 (1942), also cited by appellee, we observe that we find no reference to the “tract of land” as revenue-producing, and in any case we are bound to follow the later supreme court expression in Ratcliff.
We believe it also clear, since C.C. art. 2402 only places the “profits” from the husband’s property into the community, *327 that all non-capital[4] expenses of producing the revenue are chargeable to the community, in the sense that they must first be deducted from revenue in order to determine “profits”.
Appellee further argues that in fact the husband’s property here, because it was used as the marital home, did not produce revenue and so, under the instruction of Harris, supra, its expenses cannot be charged to the community.
We may first note that Boyer and Bru-mes, both supra, did in fact hold taxes and insurance premiums deductible, and we fail to find a basis on which to distinguish interest.[5]
Perhaps more importantly, we conclude that a community which uses as its home a house belonging to the husband’s separate estate does receive the “profits” of that house.
A husband having a suitable house as his separate property may choose to use it as the family house, or to rent (or acquire) another. If he rents his separate house, all its non-capital expenses are deductible in determining its “profits,” which alone fall to the community; and the community would of course bear the full costs of the other house it uses. By providing his separate house as the family home, the husband dedicates its actual “profits”, although not reduced to a dollar-revenue, to the community, and that dedication produces an actual, in-pocket, dollar saving to the community in the form of the rent for another house which the community consequently does not have to expend.
The husband’s separate property unquestionably did produce “profits” to the community, and, in the supreme court’s words in Ratcliff, supra, 24 So.2d at 460, “it is but just, equitable and proper that the ordinary expenditures required in the production of such profits and in the preservation of the property should be borne by the community.” In the absence of a showing of “fraud, to injure his wife”, C.C. art. 2404, the husband’s expenditures thus to benefit the community are not reclaimable by the wife.
In the present case, the total of interest, insurance premiums and taxes during the six-year community amounted to $4,652.97, an average of some $65 a month. Since it is highly improbable that any similar single residence could have been rented for less than $65 a month, we need not inquire whether expenses in excess of profits are chargeable to the husband’s separate estate.
The taxes, insurance premiums and interest were properly paid out of the community and it has no claim against the husband for those items.
Accordingly, to the stipulated other assets of the community of $2,230.87, we add the community’s claim for only the principal paid against the husband’s separate debt, $1,421.03, making total community assets $3,651.90. Stipulated total community debts of $2,283.00 leave a net community of $1,368.90, of which each spouse’s share is $684.45.
*328 It was stipulated that the husband alone is obliged to pay the community debts of $2,283.00, and that he is to retain property value at $880.87; and his $1,421.03 debt to the community is to be discharged. Thus the husband’s net at this point from the community $18.90, or $665.55 less than his share. The wife’s net at this point is all assets, amounting to $1,350, or $665.55 more than her share.
The judgment is reversed as to that part appealed from, and is recast as follows:
It is ordered, adjudged and decreed, that there be judgment herein in favor of defendant, Exie Elouise Melcher Hurta, and against plaintiff, Joe Donald Hurta, decreeing a partition of the community of acquets and gains existing between them in accordance with their stipulation and recognizing a debt due by defendant to plaintiff in the amount of $665.55.
Plaintiff is to pay the costs of trial and defendant is to pay the costs of this appeal.

. Boyer in fact also involved two notes representing tlie balance of the purchase price of the husband’s property used as the home. They totalled $2,240 of which $240 was interest. However, the husband’s heir did not put at issue whether the interest should he treated differently from principal; the sole contention was that the notes were paid out of separate funds. The court did not discuss the interest separately and thus made no separate pronouncement on the interest issue. The court did in fact allow, as a debt of the community, interest on all claims of a daughter of the husband by first marriage for itemized funds of the daughter, some received by him before, and some after, the second marriage.

. Brunies’ charge against the community of principal and interest on mortgages on the separate property is not pertinent here since there the mortgage loans were made during the community for community purposes and thus were community debts.

. Pennison cited Jefferson v. Stringfellow, 148 La. 223, 86 So. 774 (1920), which held only that certain property was the husband’s separate property and the widow (not his heir) had no standing in a suit claiming that property. The court reasoned “the title was vested in Maxey when he married and belonged to his separate estate at his death, and not to the community existing between him and Daler” despite payments from community funds. The court added by way of explanation of its non-community nature, “and any payments made thereon during the marriage became a debt in favor of the community against Russell Maxey. * * * Hence it follows that Daler Maxey Davis [the widow] is without interest to prosecute this suit.” 86 So. at 777.

. Even ns to capital improvements (luring the community, the amount of funds spent on them may not be chargeable to the separate estate; only “one half of the value of the increase or ameliorations” is owed to the other spouse; C.C. art. 2408. The article is not directly applicable to payment of (principal of) a separate debt on the property, but would, because in pari materia, C.C. art. 17, suggest that only the reduction of the separate debt’s principal should enter into the calculations of community settlement.

. Appellee’s theory that interest is a premarital debt, C.C. art. 2403, because its payment was required by contractual obligation prior to the marriage, is equally applicable to the ordinary house mortgage’s requirement that taxes be paid and insurance be maintained. Yet we feel that this case is not the occasion to decide that none of these items are debts that pre-exist the community, although it is true that none of them need be paid if the house is sold, and in this sense they may all be said to arise during the community because retention of the house causes them to become due.