716 So.2d 505 (1998)
Pamela Auttonberry PANZICO, Plaintiff-Appellee,
v.
Robert Lee PANZICO, Defendant-Appellant.
No. 30760-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
*506 Joe D. Guerriero, Monroe, for Defendant-Appellant.
Donald L. Kneipp, Monroe, for Plaintiff-Appellee.
Before MARVIN, C.J., and STEWART and CARAWAY, JJ.
CARAWAY, Judge.
This community property dispute primarily concerns an accounting for certain community funds earned by the husband during the marriage and retained in part in his separate proprietorship. Both spouses appeal the trial court's rulings on the accounting for the community property. Based upon our review, we affirm in part and amend in part the community property settlement.

Facts
This is an action to settle the community property claims of the former marriage of Pamela Panzico and Robert ("Sonny") Panzico. At the time of the trial, the primary dispute concerned the proper accounting for salary, rents, and personal expenses of the parties that were paid out of the corporate accounts of Sonny's separate business, Garden Mart, Inc.
Garden Mart is a nursery business operated at three locations in the Monroe area. The real estate of the three business properties is owned personally by Sonny as his separate property and rented to Garden Mart. The parties stipulated that during their two-year marriage from May 1993 through August 1995, the rents owed by Garden Mart to Sonny totaled $190,558. Additionally, it was stipulated that Sonny earned a salary from Garden Mart of $16,187.16. These monies totaling $206,745.16 were the sources of community revenue,[1] which, though retained on the books of Garden Mart, were to be partitioned between the parties after consideration of the personal expenses of the marriage which were paid from the Garden Mart account. The commingling of the financial affairs of the community with the Garden Mart business affairs led to certain accounting disputes which are, for the most part, the subject of this action.
Following trial, the trial court reviewed various expense items which were determined to be either community or separate expenses and made determinations regarding the reimbursement owed by Sonny to Pamela for the satisfaction of his separate obligations from the community funds. Additionally, the trial court ordered an appraisal of the value of an improvement to the swimming pool located at the Radar Street home which was Sonny's separate property acquired before the marriage. The $2200 appraised value of the pool liner determined after the trial was included in the trial court's calculation for the final judgment. The final judgment ordered Sonny, as owner of the retained community revenues within the Garden Mart account, to pay Pamela $80,622.66. The judgment also provided that Pamela "owes to defendant, Robert Lee Panzico, reimbursement for onehalf (½) of any payments which defendant, Robert Lee Panzico, is required to make to the Internal Revenue Service to satisfy the tax liability existing between the parties *507 hereto, once the tax liability is determined...."
Both sides have appealed various rulings by the trial court in the accounting for and the division of the community property.

Discussion

Reimbursement for Payments on Sonny's Separate Debts
The facts regarding Sonny's separate indebtedness reveal that at the time of the 1993 marriage he had two bank loans. One loan with Central Bank was for approximately $115,000 and was secured by a mortgage on the Desiard Street Garden Mart property. During the marriage and out of community funds, the principal of this indebtedness was reduced $23,113.77 and interest was paid in the amount of $19,424.91.[2] The second loan with Louisiana Bank was for approximately $337,000 and was secured by mortgages on two other Garden Mart business properties and a mortgage on Sonny's Radar Street home which was his separate property. During the marriage, $82,846 was paid out of community funds in installments on this loan with the interest portion being $46,905.16.[3] Additionally, evidence presented by the Louisiana Bank representative showed that 1992 appraisals of its collateral listed the value of Sonny's home at $200,000 and the two Garden Mart locations at $180,000 each.
Based upon Pamela's arguments discussed below, the trial court ruled that the total loan payments, principal and interest, should be treated as an enhancement of Sonny's separate property and ordered reimbursement by Sonny to Pamela of one-half of such payments. Sonny disputes this ruling insofar as the payment of interest on the debts, arguing that the interest was a necessary expense for the maintenance of the civil fruits and benefits which flowed from his three business properties and from the use of his separate residence as the community home. Sonny cites Succession of Ratcliff, 209 La. 224, 24 So.2d 456 (1945) for the accounting for such interest expense in the determination of the rent or profit falling into the community from his separate business properties. He cites Hurta v. Hurta, 260 So.2d 324 (La.App. 4th Cir.1972) and Parker v. Parker, 517 So.2d 264 (La.App. 1st Cir.1987) for the treatment of home loan interest as a community expense when separate property is used as a community home.
Pamela challenges the application of these jurisprudential rules claiming that the general rule of La. C.C. art. 2364[4] should apply to require the reimbursement to her of onehalf of all of these loan payments. She argues that the rulings in Succession of Ratcliff and Hurta involved a spouse's separate indebtedness which was created by the spouse's acquisition or maintenance of the separate asset. In this case, a large portion of Sonny's debt ($250,000) arose in 1992, at the time of the first divorce between the parties when Sonny was required to pay a judgment in settlement of the initial community. The mortgages against Sonny's home and business properties at the time of the parties' second marriage in 1993 secured a debt whose origin did not pertain to Sonny's acquisition or maintenance of these properties.
From our review of the decisions in Succession of Ratcliff and Hurta, we do not find that the origin of a spouse's separate indebtedness had any relevance in the formation of the rules applied by those courts. Succession of Ratcliff provides a rule for the calculation of the civil fruits or rents that fall into the community under La. C.C. art. 2339. *508 The relevant time period for the accounting concerns what transpires during the marriage, irrespective of when and how the separate debt arose. The existence of mortgage debt against the spouse's separate asset that produces gross revenue in the form of rents requires the consideration of the interest expense paid during the community for the calculation of the net revenue or profit that becomes community property. Without the payment of interest on the debt during the community, the "separate estate would have been denied assets from which there was derived a great portion of the income ... of the community." Succession of Ratcliff, supra at 461. Likewise, without payment of the home loan mortgage during the community, one spouse's enjoyment of the benefit of the other spouse's separate property as a residence would not occur. Therefore, the interest on the home loan under the Hurta rationale need not be reimbursed by the spouse who owns the home.
Under the facts of this case beginning at the relevant time in 1993 when the parties remarried, the separate assets of Sonny totaled over $600,000 in value and provided approximately $90,000 per year in income to the community and a residence for the family. Nevertheless, in the event of non-payment of Sonny's $450,000 mortgage indebtedness during the marriage, the expected legal consequence would have been a sizeable loss of Sonny's separate estate, significantly reducing the benefits flowing from that property to the community in an amount in excess of the interest payments on the debt. Regardless of the origin of Sonny's separate debt, his leveraged separate estate clearly produced more fruits and benefits for the community, and foreclosure and the loss of community benefits were prevented during the marriage by the loan payments derived from the revenues of the business properties. Under these circumstances, the interest expense on Sonny's loans need not be reimbursed to Pamela, and she is only entitled to one-half of the $59,054.61 which is the portion of the payments which reduced the principal of Sonny's two loans.

Accounting for Community Expenses
Due to the fact that the parties' personal expenses were posted in the ledger of Garden Mart and paid, for the most part, from a Garden Mart account, certain accounting disputes arose. Both sides dispute determinations made by the trial court regarding expenses for alleged community obligations.
Sonny disputes the trial court's disallowance of a group of expenses totaling $6879.47 which were listed on a Garden Mart ledger. Based upon the testimony of Tom King, the accountant for Garden Mart, the trial court ruled:
... the ledgers are not conclusive proof of the classification of the expenses as either personal or business expenses but simply reflect the judgment of the bookkeeper and may be amended at any time to change an expense from personal to business or business to personal. Thus, the ledgers are not sufficiently conclusive to prove that a payment was made and if the payments actually made were for personal or business expenses. Therefore, without further proof in the form of canceled checks or copies thereof, these expenses cannot be held to have been personal expenses for community obligations.
From our review of King's testimony, we agree with the trial court's rejection of these items as community expenses.
The next group of expense items is contested by Pamela. The expenses were evidenced by four Garden Mart checks payable to "cash" and totaling $9900. Pamela argues that it was not proven that these monies from the Garden Mart account were actually expended on community expenses. Pamela disputed Sonny's testimony that the largest of these checks was for cash which Sonny delivered to Pamela.
Despite the rationale for its ruling quoted above, the trial court allowed these cash draws from the corporate account to be deducted as community expenses. The court applied the general presumption for community expenses under La. C.C. art. 2361. Nevertheless, we agree with Pamela's argument that such presumption was not applicable to this dispute concerning the internal *509 accounting for Garden Mart and was inconsistent with the trial court's rationale for the other expenses discussed above. The withdrawal of cash by Sonny out of Garden Mart, his separate business, requires a higher level of proof by Sonny to document how such monies benefitted the community as opposed to his separate business endeavor.
The final group of contested expense items has a separate twist. These items, totaling $27,543.16,[5] were paid for by the parties out of their personal accounts, instead of from the Garden Mart account. The status of the items as community expenses was not in dispute. Moreover, the trial court ruled that the origin of the funds in the personal accounts was "unknown," and therefore these unexplained accounts were presumed by the trial court to be community property.
From the above facts, which were not significantly disputed, Pamela argues that the trial court erroneously deducted this $27,543.16 in the accounting for the Garden Mart funds. We agree. The accounting dispute delineated in the parties' initial stipulation concerned "only" the $206,745.16 retained on the books of Garden Mart, which Sonny had earned as his salary or as the rentals on his separate property. The trial court deducted this $27,543.16 from the $206,745.16 as though the amount of these community expenses had been paid by Garden Mart. Instead, these expenses were paid out of non-Garden Mart accounts, which, though presumed community property accounts, were never clearly explained at trial and were not the subject matter of this dispute. Properly viewed, these community expenses and the undisputed community accounts offset entirely, leaving nothing to deduct from the community funds retained in Garden Mart.

Pool Liner Reimbursement
If community property is used for the use, improvement or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used. La. C.C. art. 2366. Sonny and Pamela agree that community assets were used to purchase a liner for the pool located at the matrimonial domicile, Sonny's separate property. The trial court, finding that no evidence was introduced at trial concerning the value of the liner, ordered the parties to appoint an appraiser to value the pool liner. Sonny and Pamela later stipulated to an appraised value of $2,200.
Although in its reasons for judgment, the trial court stated that reimbursement was owed by Sonny to Pamela for one-half the community assets spent on the improvement of Sonny's separate property, in the calculation of the final judgment of $80,622.66, the trial court added in the entire $2,200 appraised value of the pool liner as a reimbursement from Sonny to Pamela. We believe that this was simply a mathematical error by the trial court and that Pamela is only entitled to one-half of the appraised value. We therefore reduce the amount of reimbursement Sonny owes Pamela by $1,100, one-half the value of the pool liner.

Reimbursement for Separate Assets
Pamela complains that the trial court failed to provide her reimbursement for her separate assets which she alleges were either sold during the community regime or still in Sonny's possession. Although Sonny did not contest that the items, including wrought iron furniture, a dog pen, electric massagers and a set of stainless and knives, were Pamela's separate property, he denied any knowledge of the location of these articles. Based on the conflicting testimony of the parties, we find that the trial court correctly held that there was insufficient evidence to support Pamela's claim for reimbursement.

Tax Liability
At the time of trial, Sonny, personally, and Garden Mart were undergoing an *510 audit by the IRS covering the years 1990-1995 which includes the years that the marital regime existed. By the time of the trial court's judgment, there was no definitive ruling by the IRS as to any tax liability. Nevertheless, the trial court held that any tax liability incurred during the legal regime is a community obligation for which Pamela would owe a reimbursement payment to Sonny of one-half the amount determined. Pamela complains that this ruling was error. We agree.
Generally, a piecemeal partition of the community is not appropriate. However, where a contingent liability is involved such as this potential tax obligation, it is impossible to determine its value. See Guillaume v. Guillaume, 603 So.2d 235 (La.App. 4th Cir. 1992). While it would be unfair to the parties to hold off partitioning the community awaiting the outcome of contingent liabilities, it is likewise premature to assign their potential IRS obligation prior to its assessment. Both spouses may be parties in any dispute with the IRS or any other creditor with a contingent and unliquidated claim for a community obligation.

Conclusion
We hereby amend the trial court's judgment in accordance with the attached appendix. We hold that based upon the $206,745.16 owed as community property funds by Garden Mart to Sonny, a total of $57,310.93 remained in Garden Mart after payments for certain community obligations and the separate debts of Sonny. One-half of those funds retained in Garden Mart and a reimbursement by Sonny in the amount of $36,424.24 are owed to Pamela. The trial court's judgment is therefore amended to order an equalizing payment from Robert ("Sonny") Panzico to Pamela Panzico in the amount of $65,079.71. We further amend the trial court's judgment to delete that portion concerning responsibility for the contingent tax liability. Except as herein amended, the trial court's decision is affirmed. Costs of the appeal shall be shared equally by the parties.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.

 APPENDIX
Community Funds Owed by Garden Mart $206,745.16
Expenses paid by Garden Mart:
___ Stipulated Community Expenses $ 12,455.70
___ Stipulated Separate Expenses of Sonny 6,000.00
___ Loan Payments Made to Louisiana Bank and Central
 Bank 125,384.68
___ Payments of Sonny's Debt to Garden Mart (undisputed) 5,593.85
Total Expenditures (149,434.23)
 ___________
Remaining Community Funds at Termination $ 57,310.93
 divided by 2
 ____________
Community Funds of each party in Garden Mart Account $ 28,655.47
ReimbursementOwed by Sonny
___ For Sonny's Stipulated Separate Expenses $ 3,000.00
___ For One-Half of Principal Reduction on Central Bank
 and Louisiana Bank Loans 29,527.31
___ For Debt Payments to Corporation 2,796.93
___ For One-Half Appraised Value of Pool Liner 1,100.00
Total Reimbursement Owed by Sonny $ 36,424.24
 ___________
Equalizing Payment Owed by Sonny $ 65,079.71
 ===========

NOTES
[1] The rents generated to Sonny from his separate property fell into the community as civil fruits under La. C.C. art. 2339.
[2] The $42,538.68 paid to Central Bank was stipulated by the parties. The underlying circumstances of the loan were discussed at trial by a bank loan officer. Nevertheless, this expense item was overlooked by the trial court in its calculations of the accounting for the community.
[3] Although Sonny claims that the interest on this loan during the marriage totaled $48,028.06, the exhibit evidencing the actual payment of this loan, joint exhibit 7, failed to show any payments made during the legal regime after December 1994. We therefore calculated the actual demonstrated interest paid to be $46,905.16.
[4] La. C.C. art. 2364 provides: If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used.
[5] This group of items was listed in the trial court's accounting summaries as totaling $31,259.97, including $24,474 paid to the Monroe Church of God and $6,785.97 paid to Central Card. Nevertheless, our review disclosed that the four checks to Central Card listed by the trial court in this summary group were actually stipulated community expenses paid from the Garden Mart account while three other checks to Central Card, check numbers 898,952 and 995, were drawn against Sonny's personal account and totaled $3,069.16.